## Case No. 2,487.

CASE v. BEAUREGARD et al.

[1 Woods, 125.] [1]

Circuit Court, D. Louisiana. June 15, 1871.[2]

PARTNERSHIP DEBTS—FOLLOWING PARTNERSHIP PROPERTY—RIGHTS OF CREDITORS.

1. The rule that trust property may be followed into whosesoever hands it comes, with notice of the trust, does not apply to a case where an officer of a bank, being a member of a partnership, without due security, lends to his firm money of the bank, which becomes mingled with the other property of the partnership.

[Cited in Case v. New Orleans & C. R. Co., Case No. 2,493; Merchants' & Farmers' Bank v. Austin, 48 Fed. 27.]

[See note at end of case.]

2. Although it is generally true that partnership creditors are to be preferred in the distribution of the property of the partnership, and may follow it, if necessary, when one of the partners attempts to appropriate it to the payment of his individual debts; yet a mere simple contract creditor cannot maintain a suit for this purpose unless the partnership has in some manner gone into liquidation, or its property has been subjected to a trust for payment of debts—as where an assignment has been made in fact or in law.

3. Partnership creditors, merely as such, have no lien on the partnership property before obtaining judgment and execution; but can only be subrogated to the lien of the partners, and are therefore without remedy where such lien has been waived by them.

In equity. Hearing on bill, answers, replications and proofs.

J. D. Rouse, for complainant, who cited Rogers v. Batchelor, 12 Pet. [37 U. S.] 221; U. S. v. Hack, 8 Pet. (33 U. S.) 271; Clagett v. Kilbourne, 1 Black. [66 U. S.] 346; Civ. Code La. art. 2823 (2794); Story, Eq. Jur. § 1253; Collins v. Hood [Case No. 3,015]; Innes v. Lansing, 7 Paige, 583; [Russell v. Clark's Ex'rs] 7 Cranch [11 U. S.] 89; Lawton v. Levy, 2 Edw. Ch. 197; 1 Blatchf. 232 [McCalmont v. Lawrence, Case No. 8,676].

John A. Campbell, H. C. Miller, and L. E. Simonds, for the N. O. & Carrollton Railroad Company, cited Hagan v. Walker, 14 How. [55 U. S.] 29; Hoxie v. Carr [Case No. 6,802];

---

[1] [Reported by Hon. William B. Woods. Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in Case v. Beauregard, 99 U. S. 119.]

Ex parte Ruffin, 6 Ves. 119; Story, Eq. § 1259.

W. W. King, for Fourth National Bank of New York.

BRADLEY, Circuit Justice. On the 13th of May, 1867, the First National Bank of New Orleans was closed, and upon an examination of its affairs, was found largely insolvent, and the plaintiff was appointed its receiver, under the 50th section of the national banking act. Amongst the assets were found a note of "G. T. Beauregard, Lessee," for $40,000, dated Sept. 14, 1866, payable on demand, and a draft of T. P. May on A. C. Graham, of New York, for $125,000, dated March 19, 1867, but not accepted. These documents had been credited to the bank account of "G. T. Beauregard, Lessee," which was, nevertheless, overdrawn $72,000, and without these credits, would stand overdrawn $237,000. T. P. May and A. C. Graham were largely interested in the bank, and had been its principal managers, Graham being president from July, 1865, to July, 1866, and May being president from the latter date to the failure of the bank. "G. T. Beauregard, Lessee," was a partnership firm consisting of G. T. Beauregard and the said T. P. May and A. C. Graham, the partnership being lessees, in the name of Beauregard, of the New Orleans & Carrollton Railroad (a horse-car railroad in the city). The lease was taken in April, 1866, and Beauregard was to manage the business, and May and Graham were to put in $150,000 capital each. Their bank account, up to the time the bank failed, had credits, other than the note and bill above mentioned, to the amount of $295,000, and debits to the amount of $532,000. The credits were made up of deposits of the daily receipts of the road, and several cash payments of $20,000 each, made by Graham. Of the debits, about $35,000 was paid for real estate for the road, $130,000 for reconstruction, $155,000 for current expenses, $85,000 for stables, car sheds, houses for employees, etc. The residue was for horses, cars, and other incidents to the railroad business. The rents and current expenses exceeded the receipts of the road.

It further appeared, that on the 8th of May, 1867, Graham assigned all his interest in the Carrollton Railroad and firm of G. T. Beauregard, Lessee, to the Fourth National Bank of New York, to secure the payment of a claim of over $50,000 against the First National Bank of New Orleans, for which Graham had become responsible. This assignment appears to have been made in good faith, and was recorded on the 15th of May. On the 14th of May, 1867, May being a defaulter to the government as assistant treasurer, for over a million of dollars, assigned to the United States, as security for his indebtedness, a large amount of property, including all his interest in the Carrollton Railroad;

and on the 16th he assigned Graham's interest also, pretending to own Graham's share, and to have a sufficient power of attorney for that purpose. But the weight of evidence is against this pretension, and the prior assignment of this share by Graham himself took the precedence. On the 21st of August, 1867, the United States, by its agent, assigned all its interest in the Carrollton Railroad and partnership of G. T. Beauregard, Lessee, to Bonneval, Hernandez & Binder, defendants in the cause. The assignment purported to be for two-thirds interest, and was guarantied clear of all debts except the indebtedness of May and Graham as lessees and copartners in the firm. Bonneval and his associates, supposing themselves to be owners of two-thirds, and Beauregard retaining his one-third of the leased property, they together surrendered the old lease and all the partnership property to the New Orleans & Carrollton Railroad Company, and received therefor 4,000 shares, being an equal amount of capital stock of the said company to that which was then outstanding; thus becoming one-half owners of the whole property of the company, including the property by them put into the concern. The company assumed the debts of the firm of G. T. Beauregard, Lessee. This arrangement as to the issue of new stock was sanctioned by an act of the legislature. The stock thus obtained by Beauregard, Bonneval and their associates has all been disposed of to other persons.

In view of these facts, the receiver of the bank contends, 1. That he is entitled to follow the property of G. T. Beauregard, Lessee, and subject it to a trust in favor of the bank, on the ground of its being the product of the money of the bank, wrongfully taken by the partners; 2. That, as a creditor of the partnership, he has a right to have the partnership property applied to the payment of the debts of the firm; and charges the defendants, namely, the present railroad company as newly organized, and Bonneval, Beauregard and their associates, as intermeddling with and taking possession of said property with full knowledge of the equities with which it is affected.

1. The first ground of relief, namely, that the property belongs to the bank, or is held in trust for the bank, because purchased with the money of the bank, is clearly untenable. Beauregard & Co. were engaged in business which required a considerable amount of funds, and became large borrowers of the bank. With the money thus obtained, and with other money derived from the proceeds of their business and other sources, they paid expenses, made repairs, bought cars, horses and other property, and found themselves at the end of the year largely behind. The bank is their creditor, and considering May's peculiar relations, it has cause to make a charge of official misconduct against him; but how does that entitle the bank to claim the property of the firm as its own?

The identity of the property purchased or procured with the money of the bank cannot be ascertained. It was mingled with the other money of the firm, and the whole mass was used indiscriminately for all the purposes of the company. Can the receiver point to a single car or horse or lot of ground, and say, "This was purchased with the money of the bank?" Other creditors of the firm have become interested, and nothing but inextricable confusion would ensue if any such claim were allowed to prevail. Where trust property is converted, and the proceeds can be identified, it may undoubtedly be followed by the cestui que trusts, and brought back to be appropriated to its original purposes. Money of a bank embezzled or misappropriated by its officers may undoubtedly be followed up in the same way, if the money itself, or its proceeds, can be identified, and no innocent person is injured by its recovery. But supposing the money now in question could be regarded as thus misappropriated, the impossibility of identifying it, and of doing justice to third parties, renders the application of the principle impracticable.

2. The position that May's assignment to the government was void as against the bank, on the ground of its being an assignment of partnership property to pay an individual debt, is equally untenable. The assignment was only of May's interest, which interest was individual property which he had a right to assign if his partners did not object. They had an equity to have the property subjected to the payment of the partnership debts, and to this equity the partnership creditors might be subrogated, unless the partners themselves waived it. The creditors, as such, had no lien on the property. They could only operate through the lien of the partners, and if this was given up, they were without remedy unless they could show fraud. No fraud is attempted to be shown in this assignment. It was made subject to the payment of the firm's debts, and with this condition the New Orleans & Carrollton Railroad Company received it, agreeing to discharge the debts of the firm, except such as had been assumed by Bonneval and his associates. Graham did not object to the assignment, except so far as it covered his own share, which he himself assigned to a creditor of the bank itself. Beauregard did not object —for he joined with the assignees of May's assignees in assigning the whole property of the firm to the Carrollton Railroad Company, with a stipulation that said company should pay all the debts of the firm. The case then amounts simply to this—a partnership firm assign their interest in the partnership property, subject to a stipulation for the payment of the partnership debts; and a creditor of the partnership files a bill against the assignees to obtain a direct appropriation of that property to the payment of the said debts. Such a bill certainly cannot be sustained, even at the suit of a judgment and execution creditor, unless it be shown that the assignment was intended to defraud the creditors of the firm. This cannot be pretended here, where the assignment itself contains a stipulation that the partnership creditors shall be paid.

But an insurmountable difficulty in the complainant's case is, that he is only a simple contract creditor, without any judgment, execution or specific lien to stand upon; and the partnership has not gone into liquidation. It is not enough for a person simply to allege that he is a creditor of another to enable him to pursue his debtor's property into the hands of others claiming to have purchased it; he must have a judgment and execution, or some lien upon it, or it must be subjected to a trust for creditors, or placed in a course of liquidation. If a statute subjects a particular fund to a particular class of claims, it may be regarded as imposing a trust thereon; or if the debtor makes an assignment for the benefit of creditors; or if the law makes an assignment for him, as in case of bankruptcy; in all such cases the creditors for whose benefit, as cestui qui trusts, the fund is held in trust, may come into court without a judgment and ask for its administration in accordance with the trust. But without some such constituted trust or lien, a creditor has only the right to prosecute his claim in the ordinary courts of law and have it first adjudicated before he can pursue the property of his debtor by a direct proceeding. The propriety of such a preliminary adjudication in this case is apparent from the fact that one of the controversies in the case is, whether the bank, of which the complainant is receiver, was a creditor of the firm to the amount claimed. The defendants allege that the amount of the bill of exchange, namely, $125,000, at least, was the debt of May, and not the debt of the firm, being a portion of the capital which he was bound to put in, and being procured from the bank by him personally, and placed to the credit of the firm on his own account.

The bill must be dismissed with costs.

[NOTE. Complainant appealed to the supreme court, which affirmed the decree of the circuit court, on the grounds, as assigned by Mr. Justice Story, who delivered the opinion, that the assignments by Graham to the New York bank, by May to the United States, by the United States to Bonneval, Hermandez & Binder, and the act of fusion by which the rights of all the parties became vested in the New Orleans & Carrollton Railroad Company, had the effect to convert the partnership property into property held in severalty, or at least to terminate the equity of any partner to the payment of the joint debts, and therefore, unless the assignments and the act of fusion were fraudulent, the bank, of which complainant was receiver, had no claim upon the property held by the railroad company, arising out of the fact of its relation of creditor to the partnership; also that there was nothing in the case to impeach the bona fides of the transaction by

which the property became vested in the railroad company, and that the provisions of the Louisiana Code, art. 2823, providing that "partnership property is liable to the creditors of the partnership in preference to those of the individual partner," created no specific lien upon the property which continued after it had ceased to belong to the partnership. The court further held that, in the absence of satisfactory evidence that the property was purchased with the bank's money, it did not, in equity, belong to, nor was it clothed with a trust for, the bank; and therefore the bank had no specific claim on the property, nor a trust which a court of equity could enforce. Case v. Beauregard, 99 U. S. 119.

[Complainant subsequently recovered judgment against the defendants Beauregard, May, and Graham for the sum of $237,008.89 (see case on error, Beauregard v. Case, 91 U. S. 134), and filed his bill against the same defendants as herein to have the transfers of the partnership property declared void, and to compel the defendant railway company to pay to him as receiver the amount of such judgment, and there was a decree for defendants, dismissing the bill. See Case No. 2,493.]