# St. Louis Brewing Association *v.* Austin, Receiver, &c.

# Hancock Bros. & Company *v.* Austin, Receiver, &c.

*Bills in Equity by Creditors Against Receiver of Suspended
National Bank to Enforce a Trust.*

1. *Constructive trust; when declared upon assets of insolvent bank.*
Where a bank induced collections and deposits by false representa-
tions of solvency, creditors whose money was thus procured can not
have a trust or preference declared in their favor upon the assets of
the bank in the hands of a receiver without showing, in addition to
such fraud, that the identical money deposited by or collected for
them, respectively, had come to the hands of the receiver and was
held by him *in specie* at the time their bills were filed, or that their
funds had been mingled with the funds of the bank which came to
the receiver's hands, and constituted in part the gross sum held by
him, or that their identical money had been invested in tangible
property which came to the hands of the receiver and was held by
him.

APPEAL from the Chancery Court of Colbert.
Heard before the Hon. THOMAS COBBS.

The First National Bank of Sheffield, Alabama, organized
under the national banking laws of the United States, be-
gan doing business at Sheffield, Ala., in the month of Jan-

uary, 1887, and continued in such business until November 29th, 1889, when, being insolvent, it closed its doors and suspended business. It was taken charge of by the officials of the Government, and its assets placed by the Comptroller of the Currency in the hands of a receiver, who is the defendant to the bills of complaint in the above stated causes.

Published statements and sworn reports, that it was being profitably conducted, were made by its officers and directors, from time to time, until and including October, 1889.

On the 25th day of November, 1889, the complainants, Hancock Brothers & Company, sent to said bank its draft on Wilson & Company, for the sum of one hundred and nine dollars, accompanied by instructions to collect said draft and remit the proceeds thereof to said complainants; and on the 29th day of November, 1889, the day when it suspended, said bank collected said draft, but failed to remit the proceeds of said collection to them, but applied said money to its own use, mingling it with its assets. The bank sent complainants a draft on W. L. Moody & Co., of New York city for the amount of said collection, less the charge for exchange; and at the time said draft was sent by the bank and said collection was made, and when said draft was presented for payment, the bank was without funds in the hands of Moody & Co.; all of which facts were known to Benham, the cashier of said bank, who drew said draft, and to all of its officers. The draft was not paid and was protested for non-payment.

In the case of the St. Louis Brewing Association it had been doing business as a depositor with said bank for some time prior to its suspension, and between the 19th and 29th days of November, 1889, it had made the following deposits; November 19th, $243.45; Nov. 25th, $192.75; Nov. 26th, 143.55, and on November 29th, the date of the bank's suspension, $340.77, aggregating $920.52. Some checks were drawn against these deposits, leaving a balance at the time of said suspension of $754.52 in the bank to the credit of said complainant.

Within a week or two of the bank's failure, the agent of said complainant inquired of the cashier of the bank about its condition, and was told by him that it was in a good fix.

Before this time the bank was really insolvent, and this fact was known to the cashier.

The transaction above set forth is the only one shown to have been had between Hancock Bros. & Co. and said bank.

[St. Louis Brewing Association v. Austin, Receiver, &c.]

For some time prior to the suspension, the drafts of the bank sent to its various creditors had been protested.

The president of the bank from its organization until its close, was indebted to the bank in the amount of $15,000 on his notes; $33,000 on overdrafts; and between $75,000 and $100,000 on papers, notes and bills endorsed by him, discounted by the bank for him, and the amounts placed in his accounts, and he owed it at the time of its suspension between $123,000 and $148,000.

It is also shown that the cashier of the bank was indebted to it more than $10,000.

The capital of the bank was $100,000, more than one-half of which was invested in the bank building, furniture, fixtures and lots.

The president and cashier had the control and management of the bank.

There was turned over to the Receiver, as the assets of the bank by the Examiner, who had taken possession by direction of the Comptroller, cash $110.95; bills receivable, $47,138.65; overdrafts, $43,436.72, in addition to the real estate and other specific property. None of these assets were acquired by the bank after the debts of either of the complainants had accrued. The remaining facts sufficiently appear in the opinion of the court.

ROULHAC & NATHAN for the appellant.—The receiver is simply a statutory assignee of the bank and holds no better title by virtue of his appointment than the bank had before his appointment. The relative rights of creditors with respect to the assets of the bank are the same after as before the appointment. Section 5234 of the revised statutes of the United States, with the exception of certain provisions for the protection of the government, does not in any manner vary the respective rights and equities of the bank and persons with whom it had dealings when a going concern. There is nothing in the national banking laws which requires a *pro rata* distribution of the assets of a suspended bank without reference to special rights or equities. The assets are to be distributed as under a general assignment, and consequently subject to all valid priorities and equities. —*Relf v. Rundle*, 103 U. S. 222; *Peak v. Ellicott* 30 Kans. 156; *Pennell v. Deffell*, 4 DeGex. M. & G. 372. The collection of the Hancock Bros. & Co. draft by the bank after its insolvency constituted the bank a trustee of the proceeds, and they are entitled to recover such proceeds in full. 1 Morse on Banking § 248 (a); Haven's Petition 8 Benedict 309;

[St. Louis Brewing Association v. Austin, Receiver, &c.]

*Levi v. National Bank of Mo.* 5 Dillon 104; *First Nat. Bank v. Bank of Richmond* 76 Ind. 561; *Jockusch v. Towsey* 51 Tex. 129. The presumption that the managing officers of the bank had knowledge of its condition necessarily arises from the circumstances in proof, the managing officer in this case being the president.—*McLeod v. Evans*, 66 Wis. 401; *Knatchbull v. Hallett* 13 Chan. Div. 696; *Dows v. Kidder*, 84 N. Y. 121; *People v. City Bank* 96 N. Y. 32; *Anonymous* 67 N. Y. 596; *Peak v. Ellicott* 30 Kans. 156; *St. Louis & San Francisco Ry. Co. v. Johnston*, 133 U. S. 566; *Martin v. Webb* 110 U. S. 715; *Manhattan Bank v. Walker*, 130 U. S. 267; *Loeb Bros. v. Flash Bros.* 65 Ala. 526; *Donaldson v. Farwell*, 93 U. S. 633. A more rigid rule and responsibility for good faith and honest dealing will be applied in the case of bankers than of merchants and traders because greater confidence is asked and reposed and the consequences of dishonesty more widespread and disastrous, and in all cases where one is induced by the fraud of another to enter into contractual relations, he is considered as having never consented at all and may rescind. *Libby v. Hopkins* 104 U. S. 303-307; *Nat. Bank v. Ins. Co.*, 104 U. S. 54; *Williams, Deacon & Co. v. Jones*, 77 Ala. 294. In the case of Hancock Bros. & Co. the draft having been sent for collection with instructions to collect and remit proceeds to the sender no relation of depositor existed, and in its then condition it was the duty of the bank not to make the collection, or if collected not to change the character of the proceeds but to remit them as received or if remitting in any other form not to send its own worthless bill of exchange; and having converted the proceeds the owner became entitled to recover the same, not as a creditor merely but as the real owner of the money.—*Sweeny v. Easter*, 68 U. S. 166; 2 Morse on Banking § 567 *id.* 568 (a). So far as the fraud of the bank as to both complainants is concerned it is wholly unnecessary for the complainants to show that the money received by the bank is or ever was in the hands of the receiver. The money was trust funds which were intermingled by the bank with its own funds and the complainants upon showing that fact are entitled to fasten a charge therefor upon the whole fund in the hands of the receiver, unless it is affirmatively shown that no part of complainant's money is in the mass of assets upon which it is sought to fasten a trust, and in this case there is no proof that complainant's money was ever taken out of the fund into which it is shown to have entered, the burden of proof in this respect being on the defendant. *Frith v. Garland* 2 Hem & M. 417. It

makes no difference that instead of trustees and *cestui que trust* the case is one of fiduciary relationship, the same remedy against the evil doer exists in either case.—*In re* District Bank, *ex parte* Dale 11 Ch. D. 772 ; *Knatchbull v. Hallett* 13 *id.* 696; 2 Pom. Eq. Jur. § 1076; *Van Allen v Bank* 52 N. Y. 1; *Bank v. King*, 57 Pa. 202; *Bayne v. United States* 93 U. S. 642; *U. S. v. State Bank*, 96 U. S. 30; *Malone v. Kelley*, 54 Ala. 532 ; *Davis v. Coburn*, 128 Mass. 377; *Gunter v. James*, 9 Cal, 643; *Carin v. Gleason*, 105 N. Y. 256; *Bank v. Armstrong*, 42 Fed. Repr. 193; *Thompson v. Gloucester Savings Institution*, 42 Fed. Repr.; *Scott v. Armstrong*, 146 U. S. 499. The argument that if one creditor is entitled to a preference under such circumstances others may be, also, and the assets may be insufficient to satisfy the preferred claim, and it could not be determined which should be paid first, or from what date the fraud as to depositors shall be fixed, is answered by the rules of law that when several stand in a like position and possess equal rights against the same person or thing, the law favors the vigilant and satisfies his demand first, although it might exhaust the *res.*

DAVID D. SHELBY for the appellee.—For the general doctrine of following trust funds wrongfully converted as stated by Justice Story and Prof. Pomeroy, see 2 Story Eq. Jur. 1258-9, 2 Pom. Eq. Jur. 1051, 1058. In Alabama the rule is substantially the same.—*Maury v. Mason*, 8 Por. 212. In *Parker v. Jones* 67 Ala., 236, an effort was made to trace funds and establish a trust. The court cited and approved the case, *Maury v. Mason, supra*, and dismissed the bill, because the trust fund could not be satisfactorily "traced and *identified.*" The same general principles will be found stated in *Goldsmith v. Stetson*, 30 Ala., 164, and in other Alabama cases. Morse, after commenting on the various cases bearing on this subject in its application to insolvent banks, reaches this sound conclusion. "If the trust money or its substitute can be traced into the bank, the owner can claim it if it is still there. It has been transformed into the shape of a debt due the trustee, and is practically in the same position as substituted property actually in the hands of the trusteee." * * * "The general rule is that a *cestui* can follow the trust proper as far as it can be traced, but not when mingled with other property so as to be undistinguishable." * * * And reaching the exact question he adds : "Where a trust deposit is actually mingled with other funds so that the original property cannot be identified, the *cestui* has no better equity than the other creditors of the trustee in case of

his failure."—2 Morse on Banks and Bkg., § 590-6, (third edition, 1888.) Mr. Waite, in his work on insolvent corporations, disposes of this question in one section: "Moneys collected on a draft by an insolvent bank acting as collecting agent, cannot be recovered in full where the ear marks or means of identity are gone." Waite on Ins. Cor. § 659. When a complainant cannot by the evidence find the fund or trace it into any property held by the receiver, his claim, if founded on a fraud, becomes one for the malfeasance or non-feasance of the bank. "Claims arising out of the malfeasance or non-feasance of the association must be paid ratably with the debts technically so called." Report of Comptroller of the Currency, 1889 ; citing *Turner v. First Nat. Bank*, 26 Iowa, 562; Illinois Trust and Savings Company case, 21 Blatch, 275; *Whitcomb v. Jacob*, 1 Salk. 160 ; *Trecothick v. Austin*, 4 Mason 16, 29; *Ex parte Mordant*, 3 Dea & C., 351; *Kip v. Bank of N. Y.*, 10 John 63 ; *Bank of Commerce v. Russel*, 2 Dill. 215; *Re* Coan Manfg. Co. 12 N. B. R. 203; *Re* Janeway 4 N. B. R. 100; *Citizen's Nat. Bank v. Dowd*, 35 Fed. Repr. 340; Case, *Receiver v. Beauregard*, 1 Woods 125; *Philadelphia Nat. Bank v. Dowd*, 3 Fed. Repr. 172; *Peters v. Bain*, 133 U. S. 670.

It is not sufficient to show that the bank once had the money of complainant and that the receiver now has the assets of the bank in mass. Complainant must go further and show that the money was used in the purchase of the property, or some of the property which is in the hands of the receiver.—*Carin v. Gleason*, 105 N. Y. 256 ; *Little v. Chadwick*, 7 Lawyers Rep. Ann. 570 ; Perry on Trusts, §§ 345, 836, 842 ; Lewin on Trusts (8th Ed.) §§ 241, 836, 892 ; *First Nat. Bank of Wellston v. Armstrong*, 42 Fed. 193 ; *Merchants & Farmers Bank v. Austin Receiver*, 48 Fed. Rep. 25 ; *Ellison v. Moses*, 11 So. Rep. 347. That class of cases holding that if a bank on the eve of insolvency, and by committing a fraud obtains the money of a customer and mingles it with the general funds of the bank, the title to the money does not pass, and if the money is not expended but kept in the bank and is turned over to the receiver, the money, or a like amount, although mixed with the general fund of the bank, can be recovered in a suit against the receiver, has no application to this case where money was not only coming in but going out in large sums. The money was paid out as fast as it was received, and there are suits similar to this pending involving more than $30,000, while it is shown the receiver came into possession of only $110.75 in money, and it is not shown that he has property, real or personal, in his hands

that was bought in whole or in part with complainant's money. On the contrary the assets in the receiver's hands are shown to have been owned by the bank before the deposit and collection were made. on which these suits are based. It does not appear that complainants money was so used as to increase the assets of the bank now in the hands of the receiver. Such increase of assets certainly did not occur if the president of the bank used the money personally, nor if it was used in paying other depositors, or other debts of the bank. Such use of the money could not have the effect of fastening a lien or trust on the property in the hands of the receiver. To contend it does, is to say that the fraudulent conversion by an agent of the funds of his principal gives the principal a preference claim of the entire estate of the agent upon his insolvency, even as against the claim of his general creditors. If the complainant's money is turned into real estate ; if his money is turned into personal property, or substituted for it, or if his money is mixed with the money of the trustee, the court will give relief. The trust fund in such case is traced, but in this case the court is asked to say that a fraud in the conversion or use of funds creates a lien on the property, real and personal, of the person committing the fraud, and that the fraud will defeat the claim of creditors not connected with it, and prevent a fair and ratable distribution of a debtor's estate. *Citizens Nat. Bank v. Dowd*, 35 Fed. Rep. 341. Complainants occupy no better position than that of a special depositor whose special deposit can not be traced into any specific property. No lien can be declared upon the general property in such a case.—2 Morse on Banks, § 150, p. 1287 ; *Turner v. The First Nat. Bank of Keokuk*, 26 Iowa, 562. The case of *National Bank v. Insurance Company*, 104 U. S. 54, cited by appellant is not decisive of this case. Here there is no "money in the bag." In the case cited there was money in court—the bank was trying to enforce a lien on money it held—was trying to enforce a brokers lien on it as Dillons money and the court held it would inquire what part of the money belonged to the insurance company—Dillon's principal—and protect its ownership. In the case of *St. Louis & San Francisco Ry. Co. v. Johnston*, 133 U. S. 566, cited by appellant, it is not intimated that if the bank had collected and used the money the fraud would have created a trust or equitable lien on the property of the bank in the hands of the receiver. The case of *McLeod v. Evans*, 66 Wis. 401, cited by appellant, involved no question of the construction of the national bank act, and in other respects

differed from the case at bar—furthermore, two of the five judges dissented and one able text writer declined to accept it as authority.—2 Morse on Banking (3rd Ed.) § 567 (*a*); *Ib.* § 568 (*a*). This decision was also criticised by the Supreme Court of Massachusetts.—*Little v. Chadwick*, 7 Lawyers Rep. Ann. 570.—The Supreme Court of Texas also declined to follow the decision in *McLeod v. Evans*. See *Continental Bank v. Weems*, 69 Texas, 489. In a recent case *McLeod v. Evans*, is reviewed with great care and learning by Judge Seymour of the Circuit Court of the United States for North Carolina, and after examining all the cases it cites, he determines that it is unsupported by authority "and contradicts all previous statements of the doctrine" of trusts. *Phila. Nat. Bank v. Dowd*, 38 Fed. Rep. 172. The receiver under the provisions of the statutes of the United States relating to national banks occupies a position different in some respects from that of receivers appointed by the courts. He is appointed by the comptroller of the currency and his duties are prescribed by the United States statutes. Under the direction of the comptroller he takes possession of the assets of the bank, and the money received by him he pays over "to the treasurer of the United States subject to the order of the comptroller."—Rev. Stat. U. S. § 5234. The first lien of the bank's property is to indemnify the United States for redeeming the bank's notes, and after that the comptroller makes a "ratable dividend of the money paid over to him by the receiver."—Rev. Stat. U. S. § 5236. The bank is prohibited, after insolvency, from preferring one creditor above another in any manner.—*Ib.* §§ 5242, 5243; *National Bank v. Colby*, 21 Wall. 609, 613; 2 Morse on Banking, § 150, p. 1284. If the doctrine contended for by complainant could be engrafted on the general law of trusts stated by the text writers and courts, it would seem that the United States statutes would prevent its application to cases of insolvent national banks—otherwise the inhibition against preferences would be nugatory.—21 Blatch. 275; *Phila. Nat. Bank v. Dowd, supra*; *Balch v. Wilson*, 35 Minn. 299.

McCLELLAN, J.—These cases involve substantially the same questions and were submitted together. The bill in each of them seeks to have a trust declared in favor of the complainants upon the assets of the suspended First National Bank of Sheffield which are now in the hands of and being administered by the respondent, as receiver of said bank by the appointment of the comptroller of the treasury.

The facts in the Brewing Company's case are or may be conceded to be the following: During the month of November, 1889, said bank in various ways represented itself for the purpose of inducing collections and deposits to be solvent, in a perfectly sound condition and to be doing a good, and safe, and paying business. These representations were made to the complainant, for the purpose stated, by its president and cashier, and were acted on by complainant by way of depositing in said bank the money which is now sought to be recovered. The representations were wholly false, and known to be so by the president and cashier when they were made. The bank was utterly insolvent and these officers knew it. It was in a failing condition at the time to the knowledge of these officers, and actually failed on the 29th day of the month. With full knowledge of this state of affairs the bank officers named, and who were managing the concern, induced the complainant to make the deposit and they received the deposit and converted the money to the uses of the bank. These are also the facts of the case on this point of Hancock Bros. & Co., except that the bank made a collection for them and converted the money to its own use sending complainants a worthless check for the amount. We will concede that so far as the right of the complainants to fasten a preference lien in the nature of a trust on the assets of the bank depends upon the fraud of the bank and its officials their cases are made out on the facts we have stated. And if they had further shown that the identical money which was deposited by and collected for them respectively had come to the hands of the receiver and was held by him in specie at the time of bills filed, or that their funds had been mingled with the funds of the bank which came to the receiver's hands and constituted in part the gross sum held by him, or that their identical money had been invested by the bank in tangible property which came to the hands of the receiver and was held by him, they would have been entitled to the relief they seek. But just here is where the cases fail. It is not shown that the receiver has or ever had their funds, either segregated from or as constituting in part the money of the bank in his hands, and it is not shown that any property in which their funds were invested is now held by the receiver or ever came into his hands. To the contrary it is made to appear very clearly that the money deposited by the Brewing Company and collected for Hancock Bros. & Co., respectively, having been mingled with the funds of the bank, was paid out by the bank to depositors or other creditors before its

21

suspension. No part of this money came to the hands of the receiver in any form, and no tangible property of the bank which had been acquired or paid for by it after the funds of complainant were received—no property into which this money could possibly have gone—is now or ever has been in the possession of the respondent. Indeed only about one hundred and ten dollars in money was turned over to the receiver at all—an amount about equal to the claim of Hancock Bros. & Co., and about one-seventh of the claim of the Brewing Company, and this insignificant sum is in no wise identified as the money collected for the former or as a part of the money deposited by the latter. There is, in short, an utter failure to identify complainants' money in the hands of the receiver or to trace the money into property of the bank which came to his possession. On these facts no trust can be declared upon any money or property of the bank in the hands of the receiver in favor of the complainants and they are not entitled to any preference over other creditors of the bank in the payment of their demands. This conclusion is so well grounded upon principle and supported by texts and adjudged cases that we need do no more than cite some of the authorities which are collated in appellees' brief.—2 Story Eq. Jur., §§ 1258–9; 2 Pom. Eq. Jur., §§ 1051, 1058; 2 Morse on B'ks & B'k'g, §§ 590–6; Waite on Insol. Cor., § 659; *National Bank v. Dowd*, 35 Fed. Rep. 340; *Receiver v. Beauregard et al.*, 1 Woods, 125; *Peters v. Bain*, 133 U. S. 670; *Phila. Nat. Bank v. Dowd*, 38 Fed. Rep. 172; *Illinois Trust & Savings Bank v. First National Bank of Buffalo*, 15 Fed. Rep. 858; s. c. 21 Blatch. 275; *Maury v. Mason*, 8 Port. 211; *Goldsmith v. Stetson*, 30 Ala. 164; *Parker v. Jones*, 67 Ala. 234; *McCall v. Rodgers*, 77 Ala. 349.

This conclusion has not been reached and is not rested upon any idea that the rights of the complainants in respect of effectuating their equitable titles to the funds in controversy against the receiver are any other than they would have been against the bank itself on the facts we have stated or conceded to be true had the failure of the bank not been followed by the appointment of a receiver. Though the suspended bank had continued in the possession of its assets, these complainants could no more have recovered their funds by the invocation of equity to the declaration and effectuation of their equitable titles than they could have sued in detinue had their titles been good at law; and for the same reason: in neither case could it be maintained that the defendant bank had their property in its possession.

The rulings on demurrers to the bills in these cases were

[Koretke v. Irwin & Co.]

without injury to the complainants, and neither those rulings nor other questions need be reviewed. The cases of the respective complainants were fully developed in the evidence. They were entitled to no relief upon the facts proved. The bills were properly dismissed, and the decrees of the chancellor are

Affirmed.