### WOCO PEP CO. OF MONTGOMERY v. MONTGOMERY, Superintendent of Banks, et al.

3 Div. 59.

Supreme Court of Alabama.

June 8, 1933.

Rehearing Denied Sept. 28, 1933.

Jack Crenshaw, of Montgomery, for appellant.

H. E. Gipson, of Prattville, for appellees.

KNIGHT, Justice.

This is an appeal from a final decree of the circuit court of Autauga county, in equity, denying relief to the appellant, under a bill filed by it against H. H. Montgomery, as superintendent of banks, liquidating the insolvent Autauga Banking & Trust Company, a state banking institution, and the Birmingham Trust & Savings Company.

The cause is here submitted upon an abbreviated record, and an agreed statement of facts, including exhibits.

It appears from the bill as amended that on February 15, 1930, the Autauga Banking & Trust Company, hereafter referred to as the Autauga Bank for convenience, was engaged in the banking business at Prattville, Ala.; that on or about that date the appellant deposited in that institution a certain check for $251.05, drawn by the Woco Pep Company on a bank in Troy, in favor of the Autauga Bank, which check was indorsed, "For deposit only, Woco Pep Company of Montgomery, Inc."; that on February 17, 1930, the appellant deposited in the said Autauga Bank check for $226.42, dated February 17, 1930, drawn by the Woco Pep Company on the Troy Bank & Trust Company, and which was indorsed, "For deposit only, Woco Pep Company of Montgomery, Inc."; and that on February 18, 1930, it deposited in the said Autauga Bank check for $416.60, dated February 18, 1930, drawn by the Woco Pep Company on Troy Bank & Trust Company, in favor of the Autauga Bank, and which check was likewise indorsed, "For deposit only, Woco Pep Company of Montgomery, Inc."

It is averred in the bill that, at the time these deposits were made, the said Autauga Bank was insolvent, and that this insolvent condition of the bank was known to its officers, but unknown to the complainant.

It is averred in the third paragraph of the bill that the checks were forwarded to the respondent Birmingham Trust & Savings Company, which, for convenience, will be hereafter referred to as the Birmingham Trust, "for collection and credit," and that this last-named bank forwarded the said checks to the various banks on which they were drawn, and that they were paid by the drawee banks, and the proceeds were remitted to the Birmingham Trust on or about February 24, 1930.

It also appears from the bill that the Autauga Bank closed its doors near the end of banking hours on February 21, 1930, and that the superintendent of banks went into possession of the bank and its properties, for liquidation purposes on February 25, 1930.

In the amendment filed to the bill, it is averred that the respondent Birmingham Trust received said checks merely as the agent of the Autauga Bank for collection, and took the same "and/or" (which term is a recent "interloper," and has no proper place in the parlance of pleading) proceeds thereof subject to the equities which orator had therein; that the proceeds of the checks were held by the Birmingham Trust at the time the superintendent of banks took over for liquidation the said Autauga Bank; that on the 24th day of February, 1930, while the proceeds of said checks were still in the hands of the Birmingham Trust, complainant advised that bank of its right in the premises.

It is further averred in the amended bill that, at the time the superintendent of banks took over the affairs of the Autauga Bank, that institution was indebted to the Birmingham Trust in an amount of, to wit, $20,000, which was secured by certain collateral; that, on the settlement of accounts by and between the two named banks, the Birmingham Trust gave credit to the Autauga Bank for the amount of the proceeds of said checks, and the collateral held by the Birmingham Trust as security for the said indebtedness was released to the said superintendent to the extent of said credit given for the proceeds of said checks.

The amended bill seeks the following relief: (a) That the respondent, superintendent of banks, be decreed to hold the "proceeds of the said checks or the assets formerly held by the Birmingham Trust as security for the

indebtedness of the Autauga Bank, which were turned over to said Green (then superintendent), as a constructive trust for your orator," and that said trust be decreed a charge on the assets of the insolvent bank; that, if complainant is not entitled to that relief, a decree be rendered allowing complainant's demand as a preferred claim to be paid in priority to the ordinary creditors; that, if not entitled to the above relief, then that a decree be rendered holding that the checks or proceeds thereof were acquired by a fraud upon complainant, and that the Birmingham Trust be decreed a "mere volunteer," and acquired no rights as against the rights of complainant, and that it be decreed to be "the trustee of your orator," for the proceeds of said check, with interest thereon; and that a decree be rendered subrogating the complainant to the rights of the Birmingham Trust in the assets of the Autauga Bank held by the Birmingham Trust as security for the indebtedness of the Autauga Bank to the extent that the rights of the Birmingham Trust, in said collaterals, were reduced by reason of the credit given by the last-named company to the Autauga Bank for the proceeds of said checks. And for general relief.

It will be observed that by the specific prayer relief against the Birmingham Trust is predicated to some extent upon the alternative that the relief prayed for against the Autauga Bank is not granted.

Upon submission, upon the pleadings and agreed statement of facts, the chancellor held that the complainant was not entitled to relief and dismissed its bill. From this decree the complainant appeals.

That the Autauga Bank was insolvent at the time the deposits were made by appellant is admitted; that these checks were forwarded to the Birmingham Trust by the first named bank for "collection and credit" is also admitted; that the Birmingham Trust, upon receiving said check, acknowledged receipt of the same, in which it states that such items were deposited and received for collection only, regardless of the form of the indorsement under which the deposit had been received, is also admitted.

It is also agreed, as a fact in the case, that the Autauga Bank closed its doors and ceased to function at the close of business on the 21st day of February, 1930, and that the superintendent of banks took over its affairs on the 25th day of February, 1930, and that the appellant wired the Birmingham Trust on February 24, 1930, advising it of its rights to the proceeds of the checks, and that prior to said date the said bank had not forwarded to the Autauga Bank any portion of the proceeds.

The agreed statement of facts also shows that the Autauga Bank was indebted to the said Birmingham Trust in the sum of $80,000, and for which the said company held certain collateral; that the Autauga Bank had at that time a checking account in the first named bank; that, as the said checks were received by it, credit was given to the Autauga Bank on its checking account; that, after learning of the closing of the last named bank, the Birmingham Trust applied the balance on this checking account, in which were included the proceeds of the said checks to the payment of the note of the Autauga Bank held by the Birmingham Trust; that, on a settlement of accounts between the said Birmingham Trust and the superintendent of banks in charge of said failed bank, the Birmingham Trust gave credit to the superintendent of banks for the amount of the proceeds of the said checks, and the collateral was turned over to the superintendent of banks.

Were it not for the considerations hereinafter stated, when the appellant deposited the three designated checks with the Autauga Bank, under the indorsement "for deposit only," the relation of debtor and creditor would ordinarily have arisen between said bank and the depositor.

But, in this case, other considerations enter into the solution of the question, whether or not the relation of debtor and creditor was created by the acts of indorsement, and surrender of the checks to the Autauga Bank. Those questions arise out of the condition of the bank at the time of receiving the checks. If the bank was, in fact, at that time, insolvent, and that insolvency was known to the officials of the bank, and unknown to the depositor, then and in such case the relation of debtor and creditor would not arise. The receiving of the deposits, under such circumstances, would be a flagrant fraud upon the depositor, and ownership of the checks would remain in him, at least until they reached the hands of a bona fide purchaser. Brady on Bank Checks (2d Ed.) p. 481; St. Louis Brewing Ass'n v. Austin, Receiver, 100 Ala. 313, 13 So. 908; Hutchinson et al. v. National Bank of Commerce, 145 Ala. 196, 41 So. 143; 7 Corpus Juris 730, § 484; St. Louis, etc., R. Co. v. Johnston, 133 U. S. 566, 10 S. Ct. 390, 33 L. Ed. 683.

It is insisted in this case, however, that, while the agreed facts show that the Autauga Bank was insolvent at the time that the deposits were made by this appellant, there was no evidence before the court that the officials of the bank knew of such insolvency, and therefore no such fraud was shown as to deprive the transactions of the legal character of deposits. This, of course, depends upon the particular facts of the case, interpreted in the light of the law.

Section 3403 of the Code provides, among

other things: "The failure of any bank shall be prima facie evidence of the knowledge on the part of said individual banker, officer, or manager of any incorporated bank or individual banker, that the same was insolvent or in a failing condition when the money or property was received on deposit, provided such deposit was received or accepted within ten days before said individual banker or incorporated bank closed its doors for business. The facts and circumstances of such failure may be sufficient to rebut the presumption of guilt."

While this section now appears only in the Criminal Code, yet it was originally adopted as a part of the laws governing the banking system of this state, and, although placed by the codifier in the Criminal Code, it furnished a rule of evidence, not only in criminal cases, but in civil cases, where knowledge on the part of officials of the condition of the bank is a necessary inquiry.

We cannot agree with counsel that the rule of evidence, declared in the quoted portion of section 3403, was intended to apply only in criminal cases, and we do not feel warranted in so circumscribing it.

We hold that it applies in all cases, civil as well as criminal, coming within the terms of the act. In this holding, we are supported by a decision of the Illinois Supreme Court in the case of American Trust & Savings Bank v. Gueder & Paeschke Mfg. Co., 150 Ill. 336, 37 N. E. 227. This Illinois case seems to be well considered. At all events, we hold, under this statute, that the failure of the Autauga Bank was prima facie evidence of the knowledge on the part of the officials of the bank that it was insolvent, when the checks were received by it, inasmuch as the deposits were received within ten days before the bank closed its doors. There was no evidence offered by the respondents to rebut this statutory presumption, and therefore we are justified in concluding that, at the time the deposits were received, the bank was insolvent, and that its officials knew of this insolvency, and, with knowledge, accepted the deposits. Inasmuch as it is admitted that the appellant was in ignorance of the insolvency, the transaction must be stamped as a fraud upon appellant, and in making the deposit, under the circumstances, the appellant did not surrender his property rights in the checks— the title thereto remained in him. Under such circumstances, he has the right to follow and recover the deposits, if they augmented the assets of the bank and can be identified. 7 Corpus Juris, 730, 731; St. Louis Brewing Ass'n v. Austin, Receiver, 100 Ala. 313, 13 So. 908; Hutchinson et al. v. National Bank of Commerce, supra.

Confessedly, under the agreed statement of facts, the proceeds of said checks never actually reached the vaults of the Autauga Bank. The proceeds of the check for $251.05 did not reach the Birmingham Trust until February 20, 1930, and the items of $226.42 and $416.60 were received by that bank on February 24, 1930. The last two items were received after the Autauga Bank had closed its doors. However, it was not until after the Birmingham Trust had learned of the failure that this bank attempted to apply the checking account of Autauga Bank to the payment of the secured obligation held by it against the Autauga Bank. Just how much money, other than the proceeds of the checks involved in this suit, was in this checking account, the evidence gives no hint.

It is perfectly clear that this appellant has traced his money—for in equity and good conscience it was his money—into what was termed the checking account of the Autauga Bank with the Birmingham Trust. This was a specific fund of the first named bank, and, when the proceeds of the checks were placed in that fund by the Birmingham Trust, those proceeds immediately, and substantially, augmented the assets of the bank.

In a settlement and by an arrangement had between the superintendent of banks and the Birmingham Trust, and which took place after this bank knew of appellant's contention, the appellant's money, then constituting a part of the checking account of the Autauga Bank, was used in paying, pro tanto, the secured obligation of the last-named bank, and thereupon the collateral placed with the bank was turned over to the superintendent. A court of equity is justified in treating such a transaction as the purchase of the collateral by the superintendent, and in the purchase the appellant's money was used, and that without his consent. Thus the appellant has traced his money into the purchase of specific property. With respect to such a transaction appellant is not remediless. He may on the plainest principles of equity and justice pursue and enforce his claim upon the property, in the acquisition of which his money has been thus wrongfully used.

In the well-reasoned case of Hanover National Bank of New York v. Thomas, Superintendent of Banks, 217 Ala. 494, 117 So. 42, 45, in an opinion by Justice Brown, this court has committed itself to the following equitable doctrine, which is here applicable:

"The commingling of trust funds with other funds or the investment of the fund in property and the taking of title in some one other than the cestui que trust is one of the foundation stones of the equitable doctrine, authorizing the cestui que trust, by a proceeding in equity, to follow and recover the trust fund, or its equivalent, and to hold that the trustee by a commingling of the trust funds with funds of his own destroys the right of the cestui que trust, would in a

266

measure emasculate the doctrine. If the legal title is in the cestui que trust, and the fund can be definitely segregated from property of like character and identified, there is no need for equitable intervention. In such case an action at law affords a complete remedy. 9 R. C. L. 148, § 2; March v. Leckie, 35 N. C. 172, 55 Am. Dec. 431.

"The question as to what constitutes a sufficient 'tracing and identification' has been the subject of much discussion. What is termed the 'modern doctrine,' though it has existed for 50 years, repudiates the 'earmarked' theory, and, to state the general effect of the best considered cases, while it is not enough to show that 'trust money is to be found somewhere in the general estate of the trustee that still remains,' yet, 'when the misappropriated fund can be kept in view, traced and ultimately located in some particular fund or property,' not constituted of other like trust funds, they, or their equivalent in value, may be recovered by the wronged cestui que trust, unless he has waived his right or the defendant has acquired them in good faith and for value without notice of the rights or claim of the cestui que trust. Bank of Florence v. United States Savings & Loan Co., supra [104 Ala. 297, 16 So. 110]; Samuel Little et al. v. Chadwick, 151 Mass. 109, 23 N. E. 1005, 7 L. R. A. 570; Macy, Trustee, v. Roedenbeck (C. C. A.) 227 F. 346, L. R. A. 1916C, 12, and authorities 21 to 88; Federal Reserve Bank of Richmond v. H. D. Peters, Receiver, 139 Va. 45, 123 S. E. 379, 42 A. L. R. 742; Bank of Poplar Bluff v. Millspaugh Commission, etc., 313 Mo. 412, 281 S. W. 733, 47 A. L. R. 754."

No question of the rights of a bona fide purchaser is involved in this case, and in this particular, so far as the rights of the Birmingham Trust are concerned, this case is differentiated from the case of W. E. Herron Motor Company v. First National Bank et al. (Ala. Sup.) 147 So. 198, a case in which this writer prepared the opinion for the court.

Whether the fact that the Autauga Bank ceased to do business, and was insolvent at the time the Birmingham Trust received the proceeds of the check, deprived the last-named bank of the right to deposit the proceeds to the credit of the checking account of the Autauga Bank, we need not determine, as the exigencies of the case do not require such a determination, though we may say there is authority to the effect that such a happening did terminate such right to so credit the proceeds, and fixed the status of the parties as of that time. Bruner v. First National Bank of Johnson City, 97 Tenn. 540, 37 S. W. 286, 34 L. R. A. 532.

We are at the conclusion that the act of the officials of the Autauga Bank, in taking the deposit of appellant's checks, when the bank was insolvent, and insolvent to their knowledge, was a fraud upon the rights of appellant; that no title to the checks thereby passed from appellant to the bank; that the title still remained in the depositor; that the bank by its acts, through its officials, became a trustee, ex maleficio, of the property; and the cestui que trust was armed with the right to pursue his property, or its equivalent, until it reached the possession of a bona fide holder, which never occurred in this case; and that, having traced this property and identified it as a part of the specific money used by the superintendent of banks, who had stepped into the shoes of the Autauga Bank, in acquiring the collateral from the Birmingham Trust, the appellant had the plain equitable right to impress this collateral with an equitable lien, to the extent that his money was invested in the collateral. And this follows upon the plainest principles of equity and justice.

We hold, therefore, that the appellant has an equitable lien upon the said collateral received from the Birmingham Trust, and that he is entitled to have said lien enforced against said collateral, or the proceeds derived therefrom, if any sale has been made of the same, in preference to the other ordinary creditors of the estate, to the extent of his debt and in satisfaction of the same, including interest thereon from the time that appellant's money was invested in said collateral.

■ It abundantly appears from the evidence that the Birmingham Trust, while the proceeds of said checks were in its hands, acquired knowledge of appellant's claim to the proceeds of said checks, but, nevertheless, with that knowledge in its possession, entered into a settlement with the Autauga Bank, whereby the proceeds of said checks were applied to the payment, pro tanto, of the secured indebtedness of the Autauga Bank to it, and thereupon surrendered to the superintendent of banks the collateral then held for the payment of the indebtedness of the Autauga Bank to it. This was an unwarranted act, and in contravention of the rights of appellant. In doing this, the Birmingham Trust became a partner with the superintendent of banks in the perpetration of a wrong against the appellant, and is answerable for that wrong to appellant. Edmonson et al. v. Jones, 204 Ala. 133, 85 So. 799. We hold, therefore, that, if the said collateral or the proceeds thereof are insufficient to satisfy the appellant's demand, the Birmingham Trust is liable to the appellant for any balance that may remain unpaid, after the said collateral or the proceeds thereof shall have been exhausted in the payment of appellant's demand. Thames v. Herbert, Adm'r, 61 Ala. 340.

A decree will be here rendered fixing and declaring that appellant has a first and preferred lien upon the said collateral turned over to the superintendent of banks by the

Birmingham Trust,. or upon the proceeds of such collateral, if the same has been disposed of, for the payment of its demand, which is hereby ascertained to be $894.07, with 8 per cent. interest thereon from February 25, 1930 (the superintendent of banks to have credit against such sum for any amounts he may have paid appellant in dividends), and the superintendent of banks, if such collateral has been converted into money, or enough thereof to satisfy appellant's demand, is directed to pay the demand of appellant out of said proceeds; that, if said collateral has not been disposed of, but is still in the possession of the superintendent of banks, that officer is ordered to sell the same in the mode prescribed by law, or enough thereof to pay appellant's claim, and satisfy the appellant's demand; that, if said collateral is insufficient to pay said demand, then, upon application to the circuit court, and proof, the circuit court shall ascertain the balance due appellant, by decree, and order execution to issue therefor against the Birmingham Trust.

It follows that the decree of the circuit court in dismissing the bill is erroneous, and the same is reversed, and a decree will be here entered in accordance with the foregoing opinion, and the cause will be remanded for any such further orders and decrees as may be necessary.

Reversed, rendered, and remanded.

ANDERSON, C. J., and BROWN and FOSTER, JJ., concur.