159 So. 242

### MARYLAND CASUALTY CO. v. WILLIAMS, Superintendent of Banks.

### 5 Div. 193.

Supreme Court of Alabama.

Jan. 24, 1935.

Rehearing Denied Feb. 21, 1935.

---

Wm. M. Russell, of Tuskegee, for appellant.

Powell & Powell, of Tuskegee, for appellee.

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

BOULDIN, Justice.

The purpose of the bill is to follow alleged trust funds and reclaim them for the benefit of the party alleged to be equitably entitled thereto. The appeal is from a decree sustaining demurrers to the bill as amended.

The controlling facts averred in the bill are briefly these:

In September, 1931, the Bank of Tuskegee, a state banking corporation, having acquired charter power to operate a trust department, act as guardian, etc., under Code, § 6388, was appointed guardian of the estate of Mamie Donald and others, minors. The Maryland Casualty Company became surety on the guardian's bond. In December, following such appointment, said bank, as guardian, received the sum of $1,794.82, funds of the wards' estate, and on December 6, 1932, the further sum of $4,917.36. On January 2, 1933, some 26 days after the funds last mentioned were received, the bank failed, and was taken over by the superintendent of banks for liquidation.

A new guardian was then appointed, and the superintendent of banks proceeded to file accounts and make final settlement of the bank's guardianship. After deducting sundry items of disbursement for the benefit of the wards, and expenses of guardianship, a decree was entered in favor of the succeeding guardian for a balance of $5,862.48.

█ The Maryland Casualty Company, as surety on the guardian's bond, paid this decree and files this bill, claiming a right of subrogation to all the right and title of the wards in such funds, under Code, § 9567, and praying that the bank assets in the hands of the superintendent of banks be charged with a trust to the amount of the sum so paid, and given preference over all other creditors of the bank.

The averments on which such equity is asserted are, in substance, as follows:

That the wards' funds when received by said guardian were deposited in the general funds of said bank, were mixed and commingled with the moneys of the bank, and so remained until taken over by the superintendent of banks; that such funds were received for use and benefit of the wards; that the action of said bank in appropriating the same to its own use was in violation of its trust, and the assets of the bank were augmented thereby; that after having commingled the moneys of the wards with its general funds and assets, the bank did make divers and sundry loans and investments from the funds so commingled, wrongfully taking title to such loans and investment in the name of the bank; that such loans and investments were taken over by and are now in the possession of the superintendent of banks; that at the time the bank closed, it had $8,300 cash on hand, which went into the possession of the superintendent. By amendment it is averred that the moneys so received as guardian were carried on the books of the bank as "Trust Account"; that, knowing the total amount of cash on hand was below the amounts credited to "Trust Account" at the time these funds were received, they were accepted and placed in the general funds of the bank in violation of a duty to invest the same.

The bill prays for preferential payment out of the cash taken over by the superintendent of banks; and, if insufficient, that a preferred lien or trust be decreed on all the assets, and payment be made in preference to other creditors of the bank.

Other questions aside, the bill does not make a case entitling either the wards, or any one succeeding to their equity, to a preference over other creditors to the funds of the insolvent bank in the hands of the superintendent of banks.

The rule of long standing in this state has been reaffirmed and applied in recent cases in this court. Hanover Nat. Bank of New York v. Thomas, State Superintendent of Banks, 217 Ala. 494, 117 So. 42; Kennedy v. Carter et al., 217 Ala. 573, 117 So. 182; McMillan v. McMillan, 218 Ala. 559, 119 So. 676; Woco Pep Co. of Montgomery v. Montgomery, Superintendent, 227 Ala. 261, 149 So. 692. See, also, note 82 A. L. R. page 46 et seq.

█ While trust funds wrongfully commingled with the general funds and assets of the bank need not be "earmarked" so that the whole, or some definite portion thereof, may be assorted, separated, and withdrawn from the commingled funds, it must appear that such trust fund, or a definite portion of same, is to be identified as included in the funds on hand at the time they were taken over by the superintendent, or in some specific property coming to his hands.

█ As to the cash on hand in the instant case, averments showing a continuance of the banking business, after the funds involved were commingled, receiving deposits, paying

checks, making loans in regular course of banking business out of the commingled fund, not only fail to identify the fund claimed, but negative any general allegation that this guardianship fund is part of the cash on hand.

That such fund is to be found in the general estate is further negatived by the fact that such estate was itself shifting by receiving and paying out the commingled fund in course of the banking business.

That the trust fund in question has gone to augment the face value of assets on hand, even to the amount of such funds, would not suffice.

This court has approved the statement of the law by the Supreme Court of Massachusetts, saying: "'The court will go as far as it can in tracing and following trust money; but when, as a matter of fact, it cannot be traced, the equitable right of the cestui que trust to follow it fails. Under such circumstances, if the trustee has become bankrupt, the court cannot say that the trust money is to be found somewhere in the general estate of the trustee that still remained. He may have lost it with property of his own, and in such case the cestui que trust can only come in and share with the general creditors.' Little v. Chadwick, 151 Mass. 109, 23 N. E. 1005 [7 L. R. A. 570]." Bank of Florence v. United States Savings & Loan Co., 104 Ala. 297, 301, 16 So. 110, 111.

The averments in the instant case do not show the fund in question contributed any more to the assets going into the hands of the superintendent of banks, than did other funds, including general deposits made in a public banking institution.

Equities against the bank, as such, and its stockholders, need not be considered. The assets of the bank have become a trust fund in which the equities of creditors are to be worked out.

Assuming, therefore, all the bill claims as to this being a trust fund subject to the rules for following same, the bill is insufficient and subject to the demurrer interposed.

Moreover, the bill does not disclose any trust fund existed within the rule invoked.

Our statute empowering state banks to act as guardian, etc., does not contemplate the funds in the hands of such guardian shall be kept separate as a special deposit. The bank being solvent, such funds may be deposited to the credit of the guardianship as though an outsider was guardian, creating the same relation of debtor and creditor as with other general depositors.

Stress is laid on the duty of the guardian to invest the funds of the ward. This duty in nowise prevents the guardian from depositing the funds in a solvent bank until invested.

A breach of duty to make loans as per statute would go to the question of liability for interest on an accounting; a question not here involved. See Robinson v. J. H. Williams, Superintendent of Banks, post, p. 692, 159 So. 239; First Nat. Bank of Opp v. Weaver, 225 Ala. 160, 142 So. 420, 88 A. L. R. 201; and notes 56 A. L. R. 806; 37 A. L. R. 120.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.