159 So. 239

ROBINSON v. WILLIAMS, Superintendent of Banks.

5 Div. 192.

Supreme Court of Alabama.

Jan. 24, 1935.

Rehearing Denied Feb. 21, 1935.

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

Wm. M. Russell, of Tuskegee, for appellant.

Powell & Powell, of Tuskegee, for appellee.

694

FOSTER, Justice.

█ This is a suit in equity to declare a preference in favor of a ward in the liquidation of an insolvent bank which was the guardian of the ward prior to liquidation. The funds which the guardian received were war risk insurance or disability compensation benefits paid by the United States government.

That circumstance does not create any right to a preference. United States F. & G. Co. v. Montgomery, 226 Ala. 298, 146 So. 528; Spicer v. Smith, 288 U. S. 430, 53 S. Ct. 415, 77 L. Ed. 875, 84 A. L. R. 1525. The right is to be determined upon the principles which apply to any other trust.

The question arises upon demurrer to the bill. It alleges that the bank which is in process of liquidation was the general guardian of the ward by virtue of the law of Alabama, which has special reference to the guardianship of such funds. Acts 1931, p. 280; section 8120, Code.

As the funds were received, they were commingled with the general funds of the bank under an agreement which it made with itself to pay to it as guardian 4 per cent. interest on the daily average balances in excess of $500, considered to be appropriate for the current expenses of the ward. It alleges that this was in violation of law, and was not such an investment of the funds as was contemplated by the act of 1931. That since it has gone into liquidation, the superintendent of banks has made settlement of the guardianship in the probate court, in which a balance of $1,524.15 was found to be due, for which a judgment was rendered against the bank, but no payment on it has been made.

In the fourth paragraph it is alleged that after the funds of the ward were thus wrongfully commingled they were allowed to remain on deposit for more than a year before the bank went into liquidation. That "the monies of the said William Robinson being included in the funds of said bank so taken over by the State Superintendent of Banks, and now being in the possession of said Superintendent of Banks."

In the ninth paragraph it is alleged that after the funds were thus commingled, it "did make divers and sundry loans and investments of and from the funds so commingled, wrongfully taking title to such loans and investments in the name of the bank; that the mortgages, notes and other evidence of said loans and investments were taken over by and are now in the possession of said Superintendent of Banks, etc., and that a correct description (of them) is unknown to your orator."

In addition to the notes, etc., of which the bank superintendent is alleged to have received approximately $390,000, he also received $8,300 cash.

The prayer is that the amount ascertained be decreed a preferred claim (1) out of the cash taken over, and (2) out of all the assets of the bank in liquidation.

The statutes of Alabama authorize the bank to act as such guardian. Sections 6388, 8124, Code; Acts 1931, pp. 280, 281.

█ The rule prevails in Alabama that when a bank wrongfully mixes trust funds indiscriminately with its other funds, from which the operations of the bank are conducted, for an appreciable period of time, it cannot be said at the end of such transactions that the trust money or any part of it was in possession of the bank. Nixon State Bank v. First State Bank, 180 Ala. 291, 60 So. 868; Lummus Cotton Gin Co. v. Walker, 195 Ala. 552, 70 So. 754; Bank of Florence v. U. S. Sav. & Loan Co., 104 Ala. 297, 16 So. 110.

█ But when the misappropriated fund can be kept in view, traced, and ultimately located in some particular batch of money, it or its equivalent in value may be recovered by the wronged cestui que trust. Woco Pep Co. v. Montgomery, 227 Ala. 261, 149 So. 692: Hanover Nat. Bank v. Thomas, 217 Ala. 494, 117 So. 42; Hutchinson v. National Bank of Commerce, 145 Ala. 196, 41 So. 143.

Those principles do not conflict, but mean that if trust funds are commingled by a bank with its general mass of money, and out of it all the bank continues to operate, receiving and paying out of such commingled fund, it cannot be said that the trust moneys are to be found in what remains. This is not the rule in all states. Leach v. Farmers' Sav. Bank, 205 Iowa, 114, 213 N. W. 414, 217 N. W. 437, 56 A. L. R. 801, notes 806, et seq.; Smith v. Reddish, 113 Fla. 20, 151 So. 273; 65 C. J. 975. It is so in Alabama.

On the other hand, if the trust money is so kept and situated that it is shown to have gone into the hands of the receiver, though along with other moneys, it is in that manner traced within the rule and a preference may be declared. Likewise, the investments made out of a mass of money, which is shifting by the addition and subtraction of other funds indiscriminately, though trust money at some time was added to it, are not held in equity to have been made out of the trust money. Kennedy v. Carter, 217 Ala. 573, 117 So. 182; McMillan v. McMillan, 218 Ala. 559, 119 So. 676; Redd Chem. & Nitrate Co. v. Clay Merc. Co., 219 Ala. 478, 122 So. 652.

If some of the allegations of paragraph four were taken alone, they may be sufficient to show that the funds of the guardianship were in fact taken over by the superintendent of banks. But when it is considered that it is alleged that the deposit was made more than a year before the bank closed, and the money was commingled with the general depository funds of the bank, and that the bank made loans and investments from such commingled whole, we think the allegation that the funds of the guardianship were taken over by the superintendent of banks is a conclusion of the pleader, contradicted by other allegations of the bill.

The cases to which we have referred seem to us to settle the question in favor of the ruling of the court, without a consideration of a further question which also appears in the bill, whether the funds of the guardianship did not lose their earmark as trust money in the bank by the deposit which was made.

The doctrine which obtains in respect to tracing such money cannot apply if the bank commingled it by lawful authority. It then ceased to be earmarked, and had no preference in the mixed mass in which it was placed.

We have had occasion to observe that when a bank is an executor of an estate, a deposit of the money of such estate among other moneys on deposit is not ordinarily a wrong, fixing a liability on the bank for the payment of interest, as is the rule when an executor uses estate moneys for his own benefit. When a bank is named executor or guardian under a statute which authorizes it to act as such, there is, we think, an implied authority to make a deposit of the money so held in itself and there retained in the usual and customary manner to the same extent that the bank as such guardian or executor could lawfully make the deposit in another bank, and could lawfully retain it there. First Nat. Bank v. Weaver, 225 Ala. 160, 142 So. 420, 88 A. L. R. 201. When such a deposit is thus lawfully made, the money becomes at once the property of the bank, and does not remain impressed with the same trust as when it is segregated and held apart from all other money. This is true of course only when the circumstances are such that a deposit of the kind is not unlawful as explained in the Weaver Case, supra.

There is no lack of well-considered authority to support that principle. 7 C. J. 895; McDonald v. Fulton, 125 Ohio St. 507, 182 N. E. 504, 83 A. L. R. 1107, with notes citing the case, pages 1110, et seq.; In re Bank of Clinton, 205 N. C. 399, 171 S. E. 364, and cases cited; Swan v. Children's Home (C. C. A.) 67 F.(2d) 84; 37 A. L. R. 120, II a.

But the cases are not in harmony on that subject. Rottger v. First-Merchants' Nat. Bank (Ind. App.) 184 N. E. 267; Morrison v. Lawrence Trust Co., 283 Mass. 236, 186 N. E. 54; State ex rel. Robertson v. Bank of Bristol, 166 Tenn. 581, 64 S.W.(2d) 22; Leach v. Farmers' Sav. Bank, supra; Smith v. Reddish, supra.

But they seem to agree that trust money loses its identity when the deposit is authorized by law. Some hold that when a bank is a trustee its deposit of money with itself is unlawful, and that as long as the bank has on hand a sufficient amount of money to pay the trust deposit that money is treated as trust money.

But our cases adopt a different view of both those ideas; so that under our decisions the bank had the legal right, no contrary circumstance appearing, to deposit the money of the ward with itself. When so, it lost its identity as trust money. On the other hand, conceding that it did not lose its identity as trust money, no preference is allowed unless it can be traced directly into the possession of the receiver.

The bill does not clearly show that the money did go into the hands of the receiver,

**696**

and does not show that the deposit by the bank with itself of the trust money was contrary to law, nor that it did not thereby lose its identity.

The decree of the circuit court, in equity, is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.