# Nixon State Bank *v.* First State Bank.

### *Intervention.*

(Decided November 21, 1913.　Rehearing denied January 23, 1913.
60 South. 868.)

1. *Banks and Banking; Depositors; Constitutional Provisions.*—
Where a Texas bank sent a note belonging to it to an Alabama bank
for collection, and the Alabama bank became insolvent, but it did
not appear that the amount of the note when collected should be
credited to the Texas bank, such bank was not a depositor and en-
titled to preference under section 250, Constitution 1901.

2. *Trusts; Constructive Trusts; Following Trust Property.*—The
facts and transactions considered and it is held that the Texas bank
was not entitled to impress a trust upon funds in the hands of
the receiver of the insolvent Alabama bank since the facts fail to
show that the funds received by the receiver was composed, in whole
or in part, of the proceeds of the payment of the note belonging to
the Texas bank.

3. *Same.*—Where the funds of a principal are commingled by an
agent with his own funds, equity will not impress the funds with a
trust for the benefit of the principal, unless such funds can be dis-
trinctly traced.

APPEAL from Jackson Chancery Court.

Heard before Hon. W. H. SIMPSON.

The First State Bank of Bridgeport was declared
insolvent on a proceeding by the Attorney General and
a receiver was appointed.　Pending these proceedings
the Nixon State Bank intervened for the collection of
the amount of a note owned by it which had been col-
lected by the First State Bank and not remitted.　From
a decree adjudging that the claim of the intervening
petitioner be allowed as a common claim against the
respondent corporation, the same to be paid ratably
with other claims, the petitioner appeals.　Affirmed.

LAWRENCE E. BROWN, for appellant.　The court evi-
dently considered that section 250, Constitution 1901,
controlled the situation and that in view of that section

the depositors had a preference over petitioner's claim This provision of the constitution had consideration in the case of *Taylor v. Hutchinson,* 145 Ala. 205, and it was there held to give to holders of bank notes and depositors who had not stipulated for interest a preference over all other creditors. It would be extending the meaning unduly to regard it as giving non-interest bearing depositors preference over such a claim as that of petitioner.—159 Ind. 1; 117 U. S. 611; 18 Kans. 340; 85 Iowa 377; 29 Mo. 605. The relation of principal and agent existed in this case, and not that of depositor and debtor.—*Hutchinson v. National Bank,* 41 South. 143. This being true and the agent having failed to remit the fund was traceable under the trust.—*Central Bank v. Commercial L. I. Co.,* 104 U. S. 65; 103 Mich. 109; 57 Pa. State 202.

VIRGIL BOULDIN, for appellee. Section 250 of the constitution is self executing.—*Taylor v. Hutchinson,* 145 Ala. 202. The facts in this case establish between the two banks the relation of creditor and debtor and put the intervening petitioner in the lower class of claimants of the fund.—*Bowman v. First National Bank,* 43 Amer. St. Rep. 870; 1 Morse on Banks and Bank., section 248; 51 Texas 130; 2 Wall. 252; 28 Ill. 463. The funds therefore cannot be impressed with the trust as no trust relation existed.—*Bank of Florence v. U. S. S. & L. Co.,* 104 Ala. 297. There is no pretence that complainant's money in the hands of the receiver can be identified and there is failure to trace the money into the property of defendant which went into the hands of the receiver.—2 Story's Eq., 1258; 2 Pomeroy's Eq., 1051-1058; 133 U. S. 670; *Maury v. Mason,* 8 Port. 211; *Goldsmith v. Stetson,* 30 Ala. 154; *Parker v. Jones,* 67 Ala. 234; *McCall v. Rogers,* 77 Ala. 349; *Hutchinson v. National Bank, supra.*

McCLELLAN, J.—The main cause out of which the particular controversy arises is the administration, invoked by the Attorney General under Code, § 3500, of the assets and affairs of an insolvent state bank, viz., the First State Bank of Bridgeport, Ala. On May 1, 1910, the Nixon State Bank of Nixon, Tex., appellant, sent, by mail, to the said First State Bank, "for collection," a purchase-money note for $820 owned by it, given by T. C. Talley and wife to John F. Cooper, falling due May 11, 1910. On the day of its maturity Talley gave the First State Bank a check for $820, drawn by Blake on Wrenne & Co., bankers of Nashville, Tenn., payable to Talley; and therefor the First State Bank surrendered the note to Talley, marking it paid. On May 13, 1910, the First State Bank sent said Wrenne & Co. check, with others, making the aggregate of that remittance $1,012.73, to the First National Bank of Nashville, its correspondent, for collection and credit. The Wrenne & Co. check was collected by the First National Bank of Nashville, and that, with the other items referred to, was placed to the credit of the First State Bank on May 14, 1910. The State Treasurer, on, to wit, May 27, 1910, reported to the Governor that the said First State Bank was insolvent. When the receiver took charge of the assets of the insolvent bank, he received from the First National Bank of Nashville $1,193.61. The Nixon State Bank, owner of the Talley note, has not received or been paid the sum of its note, or any part thereof, so collected by the First State Bank. From May 13th to May 21st, both inclusive, the First State Bank remitted to the First National Bank of Nashville collections aggregating, daily, $1,012.73, $323.16, $763.95, $363.89, $163.75, $1,066.77, $259.37, and $114.60. The daily *balances* with the First National Bank to the credit of the First State Bank, from

May 14th to May 28th, both inclusive, varied between $375.40, the lowest, and $1,653.64, the highest; the balance on the last day being the said sum paid over by the First National to the receiver of the First State Bank.

The Nixon State Bank intervened, by petition, in the proceeding, asserting that the amount of the Talley note passing, as stated, to the credit of the First State Bank with the First National Bank served to increase the resources or assets of the First State Bank delivered to the receiver, and was a trust fund in equity, out of which the petitioning bank should be preferred and the liability of the First State Bank to it satisfied.

The chancellor ruled as follows: "That the claim of the intervening petitioner * * * be allowed as a common claim against respondent corporation in the sum of $820, the same to be paid ratably with other common claims, after the claims of depositors who did not stipulate for interest have been paid in full."

Section 250 of the Constitution provides: "Holders of bank notes, and depositors who have not stipulated for interest, shall, for such notes and deposits, be entitled, in case of insolvency, to preference of payment over all other creditors; provided, this section shall apply to all banks, whether incorporated or not."

It does not appear from this record that the Nixon State Bank was a *depositor,* or was otherwise within the classes described in the quoted section of the Constitution. It is made thereby to appear only that the Talley note was sent to the First State Bank "for collection." It is not shown that the sum or amount of the Talley note was, when collected, to be a credit in favor of the Nixon State Bank with the First State Bank. The ruling was therefore without error in excluding the intervening bank from the benefit of the

quoted section of the organic law in respect of its claim against the insolvent corporation.

The doctrine of *Bank of Florence v. U. S. Savings & L. Co.,* 104 Ala. 297, 16 South. 110, is, we think, conclusive against the intervener's assertion of the trust fund principle against the funds, -or any part thereof, surrendered to the receiver by the First National Bank of Nashville. The state of the account, and the varied, daily changes in its balances, between the insolvent bank and the First National Bank rendered it impossible that the proceeds, if such was the result, of the Talley note could be traced or identified with the precision necessary in order to impress it with a trust character, which equity, upon proper occasion, imposes to preserve, protect, and enforce the right of a principal whose property has been converted by the agent. It cannot be here held, as it was not in the decision mentioned, that the fund so received by the receiver was composed, in whole or in part, of the product of the payment of the Talley note. Indeed, the net daily balances between the insolvent bank and the First National Bank, subsequent to May 14, 1910, aggregate many thousands of dollars—a shifting, varying matter of daily credit and debit in the process of the daily adjusting of the account between them. The sum delivered to the receiver may as well have been the creation of credits sent, above debits made, to the First National by the insolvent bank on any day *after,* say, May 18th.

The suggestion that the lowest balance with the First National Bank existing after May 14th, which was $375.40 on May 16th, should be taken as composed of a part of the Wrenne & Co. check, upon which the Talley note was surrendered, cannot be adopted otherwise than arbitrarily. The gist of the pertinent doc-

trine of the Florence Bank decision is that, where funds or property of the principal are commingled by the agent with his property or funds, equity cannot effect its just purpose to impress the fund or property with a trust character, for the benefit of the principal, unless the principal's funds or property can be distinguished—can be distinctly traced. The considerations stated prevent the application of the doctrine, for that the funds, if so, of the petitioning bank cannot be distinguished.

In *Hutchinson v. National Bank of Commerce,* 145 Ala. 196, 41 South. 143, there does not appear to have been any factor of commingling; the sum subjected to the claim there pressed and the sum surrendered to Renfro and Dowdell, as assignees, in the general assignment made by the Shapard Bank, being that collected by the La Fayette Bank from Schuessler & Sons.

The decree is affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.

(Decided June 29, 1912. Rehearing denied January 23, 1913. 60 South. 858.)