(117 So. 42)

## HANOVER NAT. BANK OF NEW YORK v. THOMAS, State Superintendent of Banks.

### (6 Div. 48.)

Supreme Court of Alabama. May 10, 1928.

**1. Banks and banking ⬅162—Collecting bank held agent of sender bank in collecting note.**

Relation between sender bank and bank to which note was sent for collection, with agreement to promptly remit collections in reduction of indebtedness of collecting bank to sender bank, was that of principal and agent.

**2. Banks and banking ⬅166(1)—Collections in hands of collecting bank, not mixed or mingled, remain sender's property; collecting bank being trustee.**

Where bank obtained note for collection pursuant to agreement to remit proceeds to sender, collections made by it were property of sender, and, so long as such money remained in hands of collecting bank and was not mixed or mingled, it remained property of sender, and collecting bank will be treated in equity as a trustee.

**3. Trusts ⬅352—Where trust funds are commingled with other funds or invested in property, cestui que may recover funds or equivalent.**

Where trust funds are commingled with other funds or funds are invested in property and title taken in one other than cestui que trust, latter may, by proceeding in equity, follow and recover trust fund or its equivalent.

**4. Trusts ⬅358(1)—Cestui que trust may recover misappropriated or commingled trust fund, if it can be kept in view and actually located in some particular fund or property.**

Though in suit by cestui que trust to recover trust fund or its equivalent on trust fund being commingled with other funds, it is not enough to show that trust money is to be found somewhere in general estate of trustee still remaining, when fund can be kept in view, traced, and ultimately located in some particular fund or property, fund or its equivalent in value may be recovered, unless cestui que trust has waived his right or defendant has acquired it in good faith and for value without notice of rights or claims of cestui que trust.

**5. Trusts ⬅357(1)—That defendant acquired commingled or misappropriated trust fund in good faith constitutes a defense.**

In suit by cestui que trust to recover misappropriated or commingled trust fund or property in which it had been invested, if defendant acquired fund or property in good faith and for value without notice, it is defensive matter for an appropriate answer or plea.

**6. Banks and banking ⬅166(1)—On insolvency of collecting bank, in which trust funds of like character had been commingled, equity will require funds to be ratably distributed among several cestui que trusts.**

If trust fund with which complainant's money was commingled was not property of collecting bank, but was a trust fund of like character,

on insolvency of bank equity would require the funds to be ratably distributed among the several cestui que trusts.

**7. Banks and banking ⚖=166(1)—Bill to impress trust on insolvent bank's assets for sum collected by bank as trustee and mingled with cash on hand held to show that sum could be segregated or identified.**

Bill alleging that complainant bank sent note to collecting bank under trust agreement providing that collections made were to be remitted to complainant in reduction of collecting bank's indebtedness to complainant, and that collection of certain amount was not remitted, but was mingled by collecting bank with its cash on hand, consisting of a definite sum which was taken over by superintendent of banking, *held*, as against demurrer, to affirmatively show that amount claimed by complainant can be segregated or identified from general funds of bank, thereby authorizing complainant to impress a trust on insolvent bank's assets.

Appeal from Circuit Court, Pickens County; Benj. F. Elmore, Judge.

Bill in equity by the Hanover National Bank of New York against C. E. Thomas, as Superintendent of Banks of the State of Alabama, liquidating the affairs of the Merchants' & Farmers' Bank of Aliceville, to impress a trust upon certain assets of said bank coming into the hands of such Superintendent. From a decree sustaining a demurrer to the bill, complainant appeals. Reversed and remanded.

Harwood & McQueen, of Tuscaloosa, for appellant.

The allegations of the bill made a case for the relief prayed, and same was not subject to demurrer. Hutchinson v. National Bank of Comm., 145 Ala. 196, 41 So. 143.

Steiner, Crum & Weil, of Montgomery, and Patton & Patton, of Carrollton, for appellee.

It affirmatively appears that the fund in question cannot be identified or segregated from the general funds of the bank, and complainant must stand upon an equal footing with the general creditors of the bank. The demurrer was properly sustained. Lummus Cot. Gin Co. v. Walker, 195 Ala. 552, 70 So. 754; J. Allen Smith & Co. v. Montgomery, 209 Ala. 100, 95 So. 290; Jones v. Merchants' Bank, 209 Ala. 20, 95 So. 274.

BROWN, J. The bill in this case is filed by the appellant, the Hanover National Bank of New York, to impress a trust upon certain assets of the Merchants' & Farmers' Bank of Aliceville, Ala., which came into the hands of the respondent as the state superintendent of banks, to be administered in the processes of liquidation.

The material allegations of the complainant's bill, as amended, upon which complainant predicates its right to relief, are that it was the owner of a certain note executed by the Independent Gin & Warehouse Company, Inc., for $4,000; said note being one among others transferred and assigned to it as collateral by the Aliceville bank, to secure an indebtedness due to complainant from said bank, which, with others, complainant delivered to the Aliceville bank, on the 8th day of December, 1926, for collection under a trust agreement providing that "collections made by us (the Aliceville bank) on the papers are to be promptly remitted to the Hanover National Bank in reduction of our indebtedness to them."

The Aliceville bank, acting under this agreement, on December the 9th, 1926, collected from the payee of said note the sum of $1,800, which was not remitted, but was mingled by the Aliceville bank with its cash on hand, consisting of $5,000, which was taken over by the respondent on the 10th day of December, 1926, with all the other assets of said insolvent bank. That said bank was insolvent at the time it accepted said note for collection was unknown to the complainant.

The bill avers:

"That on December 10, 1926, when the affairs of said bank were taken over by the superintendent of banks for the purpose of liquidating said bank, there was on hand and turned over to the said superintendent of banks, as assets of said Merchants' & Farmers' Bank of Aliceville, the sum of, to wit, five thousand ($5,000) dollars, in cash, and petitioner avers *that in said sum* of, to wit, five thousand ($5,000) dollars in cash so on hand and so turned over to the said superintendent of banks as assets of the said Merchants' & Farmers' Bank of Aliceville, *there was included the sum* of eighteen hundred ($1,800) dollars so collected by the said Merchants' & Farmers' Bank of Aliceville, as trustee of petitioner, from the said Independent Gin & Warehouse Company on said note so owned by petitioner."

The relief prayed is that complainant's claim to said sum of eighteen hundred dollars, which went into and augmented the cash on hand, coming into the hands of respondent, be decreed to be a preferred claim payable out of said aggregate sum, and for general relief.

The respondent demurred to the bill for want of equity, and on several specific grounds, among others, that:

"It affirmatively appears from said bill or petition as amended that the proceeds of the note of the said Independent Gin & Warehouse Company, received by the said Merchants' & Farmers' Bank of Aliceville, cannot be *segregated* or identified from the general funds of said bank."

"It affirmatively appears that the collections by the said Merchants' & Farmers' Bank of Aliceville from the said Independent Gin & Warehouse Company have become so commingled with the general funds of the said bank, and

were so commingled at the time the affairs of said bank were taken over by the superintendent of banks, as to render it impossible to segregate or identify such collection in order that complainant or petitioner might be entitled thereto."

The court entered a decree sustaining the demurrer, and from that decree this appeal is prosecuted.

[1, 2] The relation between the complainant and the Merchants' & Farmers' Bank of Aliceville was that of principal and agent, "created by their agreement; a legal relation strictly, though to attain the ends of justice and preserve the confidence it involves, courts of equity under some circumstances deal with it as a fiduciary relation." Bank of Florence v. U. S. Savings & Loan Co., 104 Ala. 297, 16 So. 110; Federal Bank of Richmond v. H. D. Peters, Receiver, 139 Va. 45, 123 S. E. 379, 42 A. L. R. 742. Under the facts averred, unquestionably the $1,800 collected by the Aliceville bank from the Independent Gin & Warehouse Company was the property of the complainant, and so long as this money remained in the hands of the bank and was not mixed or mingled, it remained the property of the complainant, and the Aliceville bank will be treated, in equity, as a trustee. The bill affirmatively avers that this money so collected entered into and was a part of the $5,000, cash on hand, taken over by the respondent as state superintendent of banks.

So the question is, Was complainant's right of property destroyed beyond recovery by the mixing and mingling of the complainant's money with the money of the trustee bank?

"It may be stated as a general rule that, so long as a trust fund can be traced, the court will always attribute the ownership thereof to the cestui que trust, and will not allow the right to be defeated by the wrongful act of the trustee or fiduciary in mixing or confusing the trust fund with funds of his own, or even with those of a third party. The true owner of a fund traced to the possession of another has a right to have it restored, not as a debt due and owing, but because it is his property wrongfully withheld from him. It makes no difference whether the fund be traced into a bank account, or into the hands of an individual or firm; if its identity can be established, and no superior right of innocent parties has intervened, it will be held for the benefit of the cestui que trust. Nor does the fact that it has been changed or altered in its nature or character affect the relation between the cestui que trust and the trustee and those claiming under him. The sole question, therefore, in every case where trust property is attempted to be traced, is whether it can or cannot be identified in either its original or altered form." 3 R. C. L. 552, § 180.

The equitable right to trace the trust fund and impress the fund with which it has been commingled or the property into which it has been merged, with the trust, is rested upon the right of property and not on the theory of a preference arising from an unlawful conversion. Boyle v. Northwestern National Bank, 125 Wis. 498, 103 N. W. 1123, 104 N. W. 917, 1 L. R. A. (N. S.) 1110, 110 Am. St. Rep. 844.

This doctrine received the approval of this court in the Bank of Florence v. United States Savings & Loan Company, supra, in the following utterance:

"It is true, that a trustee, or an agent, or other person standing in a fiduciary relation, cannot derive benefit from commingling with his own, the moneys of his cestui que trust or principal. And it is equally true, that if he makes an investment of such moneys, a court of equity so long as the moneys may be distinctly traced, will follow them, and impress upon the investment the trust to which the moneys were subject." 104 Ala. 300, 307, 16 So. 110, 111.

And, again, in Nixon State Bank v. First State Bank, 180 Ala. 291, 60 So. 868:

"The gist of the pertinent doctrine of the Florence Bank decision is that, where funds or property of the principal are commingled by the agent with his property or funds, equity cannot effect its just purpose to impress the fund or property with a trust character, for the benefit of the principal, *unless* the principal's funds or property can be distinguished—can be distinctly traced."

And in St. Louis Brewing Ass'n v. Austin, Receiver, etc., 100 Ala. 313, 13 So. 908:

"We will concede that so far as the right of the complainants to fasten a preference lien in the nature of a trust on the assets of the bank depends upon the fraud of the bank and its officials their cases are made out on the facts we have stated. And if they had further shown that the identical money which was deposited by and collected for them respectively had come to the hands of the receiver and was held by him in specie at the time of bills filed, *or that their funds had been mingled with the funds of the bank which came to the receiver's hands and constituted in part the gross sum held by him,* or that their identical money had been invested by the bank in tangible property which came to the hands of the receiver and was held by him, they would have been entitled to the relief they seek. But just here is where the cases fail. It is not shown that the receiver has or ever had their funds, either segregated from or as constituting in part the money of the bank in his hands, and it is not shown that any property in which their funds were invested is now held by the receiver or ever came into his hands."

In Parker et al. v. Jones' Adm'r, 67 Ala. 234:

"The rule is, that cestuis que trust, if proper parties complainant, and entitled to relief, can follow the proceeds of trust property, or funds, into the hands of third persons, so long as the same can be satisfactorily traced and *identified,* although such person may have taken the title of property purchased with the trust fund in

his own name, or the name of any other person with notice of the facts."

This doctrine is recognized, though not stated, in the following cases: Lummus Cotton Gin Co. v. Walker, 195 Ala. 552, 70 So. 754; Jones v. Merchants' Bank of Montgomery, 209 Ala. 20, 95 So. 274; J. Allen Smith & Co. v. Montgomery, State Supt. of Banks, 209 Ala. 100, 95 So. 290. The disposition of the cases last cited turned upon the insufficiency of the averments or proof tracing and identifying the trust fund in the hands of the defendant sought to be charged, and purport to follow and reaffirm the holding of the Bank of Florence v. United States Savings and Loan Co., 104 Ala. 297, 16 So. 110. In that case, to quote from the opinion:

"The naked averment of the bill is, that in violation of duty, the agent converted to his own use the moneys of the principal, creating a mere simple contract debt. There is no averment that the assets upon which it is sought to fasten the trust had not been acquired by the agent before the conversion; *no averment that in any form the moneys of the principal entered into their acquisition.* All that can be said is that which may be said of any delinquent trustee, or agent, that he had converted the moneys of his cestui que trust, or principal, and from the business in which the agent was engaged, it may be presumed that in the course of the business, they were commingled and used with the moneys of the agent. If a trust were raised to charge the assets of the agent, a like trust would arise and be fastened on the general assets of every delinquent agent or trustee, a trust which would prevail against all others than bona fide purchasers. The moneys of the principal are incapable of being identified and traced into any of the assets of the bank, and this being true, the principal, we repeat, is a mere simple contract creditor of the agent, not entitled to any preference."

In Lummus Cotton Gin Co. v. Walker, Supt., 195 Ala. 552, 70 So. 754, all that was shown was that the insolvent bank, the German Bank of Cullman, collected money on the petitioner's note, and remitted its cashier's check for the amount to the Third National Bank of Columbus, Ga., and "this check was in due course received by said National Bank of Columbus [Ga.], and immediately forwarded for collection through its correspondent bank of Birmingham, and was * * * returned with the information that said German Bank * * * had closed its doors and its assets had been taken possession of by the state banking department." In that case there were neither averments nor proof going to show that the money belonging to the Lummus Cotton Gin Company passed into the hands of the state superintendent of banks as a part of some specific fund, or that it had been invested by the insolvent bank in property specifically pointed out, then in his hands. The holding there is that, in order to charge a fund or property in the hands of the banking department with a specific

trust, it was necessary for the cestui que trust to show something more than that "the money collected * * * was to be found *somewhere* in those funds which at that time constituted a part of the general estate of the bank."

J. Allen Smith & Co. v. Montgomery, State Superintendent of Banks, 209 Ala. 100, 95 So. 290, was here on appeal from a decree sustaining a demurrer to the bill. The averments of the bill were that the complainant on the 18th day of December, 1921, deposited for collection with the City National Bank of Knoxville, Tenn., a certain draft drawn by the complainant for $602, duly accepted by the drawer, due and payable December 20, 1921; that said national bank forwarded the draft to the Merchants' Bank of Montgomery with instructions to collect; that the draft was paid by the drawee on December 20, 1921, to the Merchants' Bank, which bank remitted the proceeds thereof to the forwarding bank by its cashier's check drawn on the Chemical National Bank of New York to the order of the forwarding bank; that this check was received by the City National Bank of Knoxville on December 22, 1921, and on the same day was by it forwarded to New York for collection, but before it was passed by the New York bank, the Merchants' Bank closed its doors and the New York bank refused payment; that from the time the said $602 were received by the Merchants' Bank and until it closed its doors and was taken over by the state banking department, it had in its possession, exclusive of any deposits or receipts subsequent to the time of such collection, the sum of $602, which came into the hands of the superintendent of banks. These averments clearly failed to trace the complainant's property—the money collected on the draft—into the hands of the defendant, and for all these averments show it may have been paid out in due course or remitted to the New York bank to meet the payment on the cashier's check. The holding there was that:

"It is well settled by the former decisions of this court that in order for these appellants to have acquired and enforced a lien upon the funds in the hands of this appellee, as receiver of the insolvent bank, they must have traced and identified the money collected for them by the Merchants' Bank, as being on hand when this appellee took over the affairs of said bank."

And we might add, the case being on demurrer, the rules of good pleading required this much to appear by affirmative averments, and not by mere inference or intendment. Bozeman v. Sun Ins. Co., 170 Ala. 373, 54 So. 178; Pucket v. Pucket, 174 Ala. 315, 56 So. 585.

The utterance immediately following the above quotation from the opinion in J. Allen Smith & Co. v. Montgomery, as State Supt. of Banks, supra, to wit, "and proof that he received or took over a fund into which the

appellants' money had been placed or with which it had been commingled will not suffice," was intended to indicate that this court was not in accord with the doctrine announced in Re Hallett, 13 Ch. Div. 696, that proof that the balance of the fund into which the claimant's money entered had not been reduced below the amount of the claim asserted would not meet the requirements of the law, but that the claimant must go further and show, as averred here, that the claimant's property remained in the fund into which it had been traced, and, thus commingled, passed into the hands of the respondent.

[3] The commingling of trust funds with other funds or the investment of the fund in property and the taking of title in some one other than the cestui que trust is one of the foundation stones of the equitable doctrine. authorizing the cestui que trust, by a proceeding in equity, to follow and recover the trust fund, or its equivalent, and to hold that the trustee by a commingling of the trust funds with funds of his own destroys the right of the cestui que trust, would in a measure emasculate the doctrine. If the legal title is in the cestui que trust, and the fund can be definitely segregated from property of like character and identified, there is no need for equitable intervention. In such case an action at law affords a complete remedy. 9 R. C. L. 148, § 2; March v. Leckie, 35 N. C. 172, 55 Am. Dec. 431.

[4] The question as to what constitutes a sufficient "tracing and identification" has been the subject of much discussion. What is termed the "modern doctrine," though it has existed for 50 years, repudiates the "ear-marked" theory, and, to state the general effect of the best considered cases, while it is not enough to show that "trust money is to be found somewhere in the general estate of the trustee that still remains," yet, "when the misappropriated fund can be kept in view, traced and ultimately located in some particular fund or property," not constituted of other like trust funds, they, or their equivalent in value, may be recovered by the wronged cestui que trust, unless he has waived his right or the defendant has acquired them in good faith and for value without notice of the rights or claim of the cestui que trust. Bank of Florence v. United States Savings & Loan Co., supra; Samuel Little et al. v. Joseph H. Chadwick, 151 Mass. 109, 23 N. E. 1005, 7 L. R. A. 570; Macy, Trustee, v. Roedenbeck (C. C. A.) 227 F. 346, L. R. A. 1916C, 12, and authorities 21 to 88; Federal Reserve Bank of Richmond v. H. D. Peters, Receiver, 139 Va. 45, 123 S. E. 379, 42 A. L. R. 742; Bank of Poplar Bluff v. Millspaugh Commission, etc., 313 Mo. 412, 281 S. W. 733, 47 A. L. R. 754.

[5, 6] Of course if the defendant acquired the fund or property in good faith and for value without notice, this is defensive matter for an appropriate answer or plea. And, if the fund with which the complainant's money was commingled was not the property of the collecting bank, but was a trust fund of like character, as in Commonwealth v. Tradesmen's Trust Co., 250 Pa. 378, 95 A. 577, L. R. A. 1915C, 10, cited in J. Allen Smith & Co. v. Montgomery, as Supt., etc., supra, equity would require the funds to be ratably distributed among the several cestuis que trust. See 3 R. C. L. 554, § 180.

[7] The averments of the bill meet the requirements of the doctrine as we find it and have stated it above, with the result that error intervened in the sustaining of the demurrer to the bill.

Reversed and remanded.

All the Justices concur, except GARDNER, J., not sitting.