155 So. 859

OPPENHEIM v. CITY OF FLORENCE
et al.

8 Div. 593.

Supreme Court of Alabama.
June 14, 1934.

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

L. A. May, of Florence, for appellant.

Bradley, Baldwin, All & White and Wm. B. White, all of Birmingham, and Rushton, Crenshaw & Rushton, of Montgomery, amici curiæ.

W. H. Mitchell, of Florence, Patrick B. Harris, of Sheffield, and J. E. Deloney, Jr., of Tuscumbia, for appellees.

Charlie C. McCall, Chief Counsel, Public Bodies Section, Legal Division, Federal Emergency Administration of Public Works, of Washington, D. C., Samuel Becker, Counsel, Federal Emergency Administration of Public Works, Wm. A. Sutherland, General Solicitor, TVA, and Joseph C. Swidler, Power Atty., TVA, amici curiæ.

FOSTER, Justice.

This suit is intended to test the right of the city of Florence to put into effect its proposal to acquire and operate an electric distribution system, including the purchase of electricity from TVA and its resale to the public.

There are three features of the proceedings involved in the proposal: (1) A contract with the United States through PWA for the acquisition of necessary funds, (2) a bond ordinance, containing certain covenants, and a form of the proposed bonds; and (3) a contract with TVA which also has certain covenants.

Authority for the program is affected by the validity and interpretation of the Carmichael Act (Acts 1933, Ex. Sess., p. 100) in connection with section 2001, Code.

An effort is made to have us modify and enlarge upon or to clarify the Opinions of the

Justices of this court reported in 228 Ala. 140, 152 So. 901, and 226 Ala. 570, 148 So. 111. We do not feel that we could add to what we held in them in so far as sections 45, 63, 64, and 76 of the Constitution are concerned. Our views there fully stated in respect to those features of the Constitution are now approved.

But we think it proper to elaborate and clarify the matters there discussed in respect to sections 225 and 222 of the Constitution, as applicable to the facts shown on this appeal. We then dealt with abstract questions, always unsatisfactory. We have now a concrete situation.

In that situation an outstanding feature is that in the proposed contracts and bonds it is expressly provided that the city does not obligate itself to pay the principal or interest of the bonds or any other sum except from revenues derived from a sale of the bonds and the operation of the proposed distribution system, and that the bonds do not, and shall never, constitute an indebtedness, and that the covenants, agreements, representations and warranties do not, and shall never, impose a pecuniary liability upon the city or a charge against its general credit.

■■■ We adhere to the opinions expressed by the justices, as above cited, that such bonds, contracts, and covenants so expressed are not debts, either presently created or in the future obligated as contemplated by section 225 of the Constitution, and are not bonds contemplated by section 222 of the Constitution. We cite as additional authorities for reference: 6 McQuillin on Municipal Corporations, § 2389 (2230); 1 Dillon on Municipal Corporations, § 199; note 72 A. L. R. 688 et seq.; Kentucky Utilities Co. v. City of Paris, 248 Ky. 252, 58 S.W.(2d) 361; Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004; McCutchen v. City of Siloam Springs, 185 Ark. 846, 49 S.W.(2d) 1037.

We take particular note of the fact that the project does not include the pledge of an existing system or the income from it, nor of other property or its income, except that which is to be acquired, and which is to be paid for solely out of the income of the new property.

In the opinion reported in 152 So. 901, there is shown a difference among us in one respect. Some of the justices thought that section 4 of the Carmichael Act, on account of its unrestricted terms, could not be available to cities which had reached their debt limit; others thought that it was restricted by other features of the act all read together. But none of us thought that the Legislature had the power to confer on such cities the right to enter into any sort of undertaking which would thereby increase its indebtedness, directly, indirectly, or contingently, as contemplated by section 225 of the Constitution, when the city at the time the debt accrued had reached its constitutional limit. Brown v. Gay-Padgett Hardware Co., 188 Ala. 423, 66 So. 161; Gunter v. Hackworth, 182 Ala. 205, 62 So. 101; Hagan v. Commissioners, 160 Ala. 544, 49 So. 417, 37 L. R. A. (N. S.) 1027.

■ The contract and proceedings here make it plain that the undertakings, such as are mentioned in section 4 of the act, do not now, and *shall never*, impose a pecuniary liability upon the city or a charge against its general credit. It is that liability which is a debt prohibited by section 225 of the Constitution. Alabama State Bridge Corporation v. Smith, 217 Ala. 311, 116 So. 695; 19 R. C. L. 979, § 276.

■ The right to stipulate as in section 4, with such limitation thereby excluding the creation of a debt then or thereafter under section 225, is not prohibited, but is incidental to the acquisition and operation of the plant authorized by the Carmichael Act and section 2001, Code. So that the difference of opinion expressed in 152 So. 901 is not material to the contracts we have here under consideration.

■ The covenants and warranties so limited have effect to bind only the proceeds of the bonds to be sold and the income from the operation of the new property, and to subject the city to such in rem proceeding or mandatory writs as are available on general principles to secure their observance. Florida v. Miami (Fla.) 152 So. 6; Conway v. Chicago, 237 Ill. 128, 86 N. E. 619.

The situation is somewhat similar in this respect to the contracts of the state docks commission and state highway commission, which impose no liability except to mandatory proceedings in rem, in nature, to require their enforcement. State Docks Comm. v. Barnes, 225 Ala. 403, 143 So. 581; State Board of Administration v. Roquemore, 218 Ala. 120, 117 So. 757.

In the opinion reported in 228 Ala. 140, 152 So. 901, we referred to our cases of Steiner v. Capitol Heights, 213 Ala. 539, 105 So. 682; Id., 211 Ala. 640, 101 So. 451, 38 A. L. R. 1264, as holding that a city having reached its debt limit cannot make an obligation, in respect to street improvements, so as to fix a pecuniary liability for the diversion of the pledged funds. (That is a contractual pecuniary liability.)

The implication was that the same principle would apply to an undertaking not to divert funds derived from a sale of the proposed bonds here under consideration and those derived from the operation of the plant. It was not at all there intended to hold that such an undertaking would not subject the city to the ordinary mandatory proceedings to require their observance when applicable, as well as to prevent a threatened violation.

Undoubtedly such a city would also be subject to applicable equity proceedings to trace trust funds. Litchfield v. Ballou, 114 U. S. 190, 5 S. Ct. 820, 29 L. Ed. 132. The remedy in this respect would be available upon the same principles applicable when a bank diverts or commingles trust funds. Our cases have fully defined the remedy in this respect, and the extent to which it is available. St. Louis Brewing Co. v. Austin, 100 Ala. 313, 13 So. 908; Bank of Florence v. U. S. S. & L. Co., 104 Ala. 297, 16 So. 110; Nixon State Bank v. First State Bank, 180 Ala. 291, 60 So. 868; Lummus Cotton Gin Co. v. Walker, 195 Ala. 552, 70 So. 754; Hanover National Bank v. Thomas, 217 Ala. 494, 117 So. 42; Kennedy v. Carter, 217 Ala. 573, 117 So. 182.

And likewise in a proper case the bondholder may be permitted to invoke the equitable doctrine of subrogation.

It is also contended that the rule should apply that, when the city obtains or uses the funds of another, it should be held to account in an action for money had and received or in tort for a conversion, and a recovery had to the extent that the assets of the city were thereby augmented, and that the Steiner Case, supra, was predicated upon an express statutory prohibition, not here pertinent.

We have noted that all the proposed undertakings separately stipulate that the covenants and agreements as well as the bonds themselves shall *never* impose a pecuniary liability upon the city.

█ If the contract not to convert the funds or divert them otherwise shall in the future be broken, its breach would not be a debt when the covenant is made. It is made to be performed and not broken. It is not a debt in the sense of a duty to pay money until it is broken. A promise to pay money is a present debt. A promise to render a service or do an act is not a pecuniary debt until it is breached. But, when the promise to render the service is made, and as a part of it there is expressed an agreement that the promisor shall not be pecuniarily liable if it is broken, there is a conclusive agreement that a debt, as contemplated by section 225, Constitution, will never thereby accrue. The debt there contemplated means an obligation to pay money, not to render a service when its breach imposes no duty to pay money. The limitation is in the extent of the indebtedness of the city, not its obligations to perform acts which do not create a liability to pay money. It is not a limitation on the creation of "liabilities" as in some constitutions. So that, if the covenants shall be broken under circumstances when such breach would subject the city to liability in a pecuniary sense, it would not be so here, because of the express stipulation to the contrary, and if, at the time of the breach, the city shall have become otherwise indebted to its full constitutional limit, that circumstance is not material in such a situation.

But it is urged that we should now affirm as the law that, if a city should in the future, when so indebted, not only divert the funds, but use them so as to augment its general treasury, there would then accrue a right of action for money had and received by those who should be then entitled to that identical money, although such right would increase its indebtedness beyond constitutional limits.

█ The argument is based upon a theory well settled that, if a city obtains money of another and uses it without authority of law or under a contract which is merely ultra vires, there is a general obligation implied by law to refund it. But there is a limitation upon the principle which we think applies to the present situation—that such promise will not be implied when the money is obtained in violation of the mandatory provisions of the law or under a contract, which the law expressly prohibits. The transaction is then illegal, and the courts will leave them where they place themselves. Bluthenthal v. Headland, 132 Ala. 249, 31 So. 87, 90 Am. St. Rep. 904; Ensley v. Hollingsworth & Co., 170 Ala. 396, 402, 54 So. 95, Ann. Cas. 1912D, 652; Cottonwood v. Austin & Co., 158 Ala. 117, 48 So. 345; General Elec. Co. v. Fort Deposit, 174 Ala. 179, 56 So. 802; note 84 A. L. R. 954 et seq.; 3 McQuillin on Municipal Corporations, § 1273 (1171); Litchfield v. Ballou, 114 U. S. 190, 5 S. Ct. 820, 29 L. Ed. 132; 6 McQuillin on Municipal Corporations, § 2398 (2239), p. 71.

█ The law will not imply a promise to pay money when to do so an express provision of the Constitution would be violated (Litchfield v. Ballou, supra), nor when the parties have expressly agreed that in such event there shall be no pecuniary liability. So that, if at the time it is sought to fasten liability on the

city for the breach of its contract by an appropriation to its own use of the funds in trust the city shall be indebted to its constitutional limit, a right to do so would be in the nature of a debt which would be in the contemplation of section 225, Constitution, and be abortive, whether it be one for the breach of an express contract not to appropriate or one implied by law.

■ But, regardless of its status in respect to indebtedness at the time of such appropriation, the law will not imply a promise to refund when the parties have expressly contracted that the city shall not be so obligated as to impose a pecuniary liability. But, if the liability shall come into being, it would not accrue until there is a breach, since the contract, when made, creates no obligation to pay out money of the city. Its legal liability would depend upon the situation which shall exist when it accrues.

■ It is also urged that, if the city, being a trustee shall convert the funds or divert them to other uses, there arises a right of action ex delicto, and that such liabilities are not debts within the constitutional limitation. It is so generally held in respect to the negligent injury of persons or property. 1 Dillon on Municipal Corporations, § 193, pp. 353, 354, § 210 (137); 6 McQuillin on Municipal Corporations, §§ 2376 (2217), 2381 (2222), p. 40; 44 Corpus Juris, 1135, § 4073. The theory is that such a liability is not voluntary, imposed by law and not by contract. But we think that, when one knowingly does an act which is the breach of an express contract as well as a duty imposed by law on account of the relation of the parties as an incident of the contract, the liability is voluntarily assumed, whether the form of the action be in assumpsit or ex delicto.

This is well illustrated by the following quotation from Keller v. City of Scranton, 200 Pa. 130, 49 A. 781, 782, 86 Am. St. Rep. 708:

"The constitutional provision is intended as a restraint on this *spendthrift tendency*, to curb the extravagance of municipal expenditure on credit, to prevent municipalities from *loading the future with obligations to pay for things the present desires, but cannot justly afford*, and, in short, to establish the principle that, beyond the defined limits, *they must pay as they go*. No limit is fixed to expenditure for which present means of payment are provided (City of Erie's Appeal, 91 Pa. 398), but a peremptory prohibition is put on expenditure on credit beyond the prescribed bounds. 'Debt' and 'indebtedness,' in the section in question, are not used in any technical way, but in their broad, general meaning, of all *contractual obligations to pay in the future for considerations* received in the present. (19 R. C. L. 979.) * * *

"It is true that the constitution does not exempt municipalities, how great soever their indebtedness, from liability for wrongful and tortious acts. But it does *not authorize the voluntary assumption of obligation to pay money by the scheme of a tort*. The distinction between real or unpremeditated torts, and voluntary acts, under the technical name of 'torts,' done by agreement for the accomplishment of a purpose prohibited to be done by contract, is clear and substantial." (19 R. C. L. 981.) (Italics supplied.)

It follows from that conclusion that, when the city stipulates that the funds received from the sale of the bonds and operation of the plant shall be held apart, as in trust, and distributed for certain purposes only, its conversion of them is a voluntary breach of one and the same duty imposed both by law and by the contract.

We are not willing to hold that the liability is in its nature involuntary because the law creates a duty not to convert funds when a contract voluntarily made imposes the same duty. It is sometimes said not to be involuntary, but a debt within constitutional limitation, if the city has the discretion to incur it, and voluntarily exercises that discretion. Lewis v. Widber, 99 Cal. 412, 33 P. 1128.

If the law will not imply a promise to refund the money because as a promise it would be a prohibited debt (Litchfield v. Ballou, supra), it would not under the same circumstances and for the same reason fix a so-called involuntary duty to refund the money as damages for the tort committed in its conversion. If the law will not imply such duty as to give rise to an action ex delicto, when the conduct is voluntary, it logically follows that the same conduct would not be so treated if it was negligent or inadvertent rather than purposeful. It would be in either event the breach of a contract voluntarily assumed.

But the city would probably be liable for personal injuries to its employees and others and for property damages due to its willful or negligent conduct in the construction of the plant or in its operation, and such liability is generally held not to be subject to the constitutional debt limitation.

The contracts have terms broad enough to exempt the city from all such liability whether in assumpsit or in tort. But that alone does not ordinarily relieve one from liability for his willful torts, because such a contract

is illegal to that extent. But a contract for exemption from simple negligence is not illegal, except for the negligent injury of one's employee, or for negligence by a utility in rendering public service to the public. 2 Contracts A. L. I., §§ 574, 575 (Restatement of the Law).

The rights of the parties are confined to mandatory, injunctive, or other appropriate equitable proceedings.

It is also insisted that section 4 of the Carmichael Act suspended the legislative power of the state to regulate rates and made an irrevocable grant of such power to the city in violation of section 22 of the Constitution.

■ The state has the right, limited by due process requirements, to prescribe rates and charges by utilities whether privately or municipally owned and operated. It may constitute an agency of its creation to act for it in that respect. Springfield Gas Co. v. Springfield, 292 Ill. 236, 126 N. E. 739, 18 A. L. R. 929; 43 Corpus Juris, 421, 423.

■ And it does not surrender its police power of supervision over contracts made by cities with private utilities for fixed rates, unless expressed in plain and unambiguous language. Ala. Water Co. v. Attalla, 211 Ala. 301, 100 So. 490; 3 A. L. R. 732 note; 43 Corpus Juris, 427; Dept. of Water & Power of Los Angeles v. Vroman, 218 Cal. 206, 22 P. (2d) 698 (6).

■ We may, for the purposes of this discussion, concede that the state cannot, by virtue of section 22, Constitution, grant an irrevocable right to a city owning and operating a utility to fix its own rates and regulations, reasonable or unreasonable, but we think that section 4 of the Carmichael Act has less in it which manifests that purpose than has section 2001, Code. That Code section was held in the Attalla Case, supra, not to have that meaning.

Section 4, supra, limits the rates in two respects: They must be *reasonable*,' and in no instance exceed those authorized and approved by the state's utility agency—the Alabama Public Service Commission—for use in other cities of approximately the same size.

Instead of granting an uncontrolled and irrevocable right to the cities, it unmistakably reserved its supervision inherent in its police power to pass upon the reasonable aspect of such rates. Within those limits cities have had thereby conferred on them a reasonable latitude to exercise a discretion, but with the right of supervision reserved to the state.

■ ■ The city of Florence has not here contracted to maintain rates that are, or shall become, illegal or unreasonable. This is made plain by section 6 of the bond ordinance, of which bondholders must take notice. The bonds are not negotiable instruments, since they do not contain "an unconditional promise or order to pay a sum certain in money." Section 9029, Code; People's Bank of Mobile v. Moore, 201 Ala. 411, 78 So. 789; Kimmons v. Jefferson County Board, 204 Ala. 384, 85 So. 774. If they were negotiable instruments as thus defined, they would be subject to sections 222 and 225 of the Constitution.

■ The effect of the Carmichael Act is that the city cannot bind itself as to rates and regulations for the distribution of electricity in such manner that the court cannot review them to determine if they are reasonable and legal. As we interpret this entire set-up, it is not here so proposed.

■ ■ The obligation of the city to fix and maintain rates sufficient to pay the principal and interest with the stipulation that its breach shall never constitute an indebtedness is likewise a covenant *to do an act*, and not to pay money, as a present liability, and, if the city shall violate the covenant, it is not subject to pecuniary damages for so doing, by the very terms of the contract.

But in one or two states the opinion prevails that such an obligation, with no such limitation as here expressed, in connection with the issuance of bonds, creates an attempt to make a pecuniary obligation to pay the bonds and interest if the rates promulgated do not produce sufficient revenue thereby making the whole proposal a debt from the beginning, though primarily payable from the income of the new property. Emphasis is laid upon a prohibition in the Constitution there considered against creating a "liability." Feil v. Coeur d'Alene, 23 Idaho, 32, 129 P. 643, 43 L. R. A. (N. S.) 1095; Miller v. Buhl, 48 Idaho, 668, 284 P. 843, 72 A. L. R. 682; Rodman v. Munson, 13 Barb. (N. Y.) 63 and Id., 13 Barb. (N. Y.) 188.

But the question has been passed on in many other states, and they refuse to follow the Idaho cases; some with the same sort of constitutional provisions, and others with provisions similar to those in Alabama. Department of Water & Power of Los Angeles v. Vroman, supra; Shelton v. Los Angeles, 206 Cal. 544, 275 P. 421; Shields v. Loveland, 74 Colo. 27, 218 P. 913; Winston v. Spokane, 12 Wash. 524, 41 P. 888; Barnes v. Lehi City, 74 Utah, 321, 279 P. 878; Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004; McClain v. Regents of University et al., 124 Or. 629,

265 P. 412; Briggs v. Greenville County, 137 S. C. 288, 135 S. E. 153; note, 72 A. L. R. 692.

We prefer to step in line with the majority, and hold that such obligations do not make the bonds debts of the city as contemplated by section 225 or 222 of the Constitution.

Our judgment is that the city of Florence may legally construct or otherwise acquire the proposed electric distribution system; that the proposed bonds, covenants, and agreements do not, and never will, impose a debt within the provision of section 225 of the Constitution; that the proceedings authorizing their execution, issuance, and sale, including the incidental contracts, and that proposed with T. V. A., were had and conducted pursuant to law; that no personal pecuniary liability, express or implied, will be thereby incurred which will subject the city to a personal judgment for (1) their breach, or (2) for money had and received, or for damages for the diversion or conversion of the funds, whether intentionally or negligently done; that the covenants and agreements impose duties which may subject the city to mandatory proceedings for their enforcement or injunctive proceedings to prohibit their disregard and create a relation of trust in funds derived from the sale of the bonds and the operation of the plant traceable and enforceable in equity, when diverted, on the same principles which generally obtain in respect to such relief in equitable proceedings. No lien is created upon the new property itself.

The decree of the court sustaining demurrer to the bill is without error, and it is affirmed.

Affirmed.

All the Justices concur.

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes