**FIRST NAT. BANK OF BIRMINGHAM v. UNITED STATES.**

No. 5383.

District Court, N. D. Alabama, S. D.

Nov. 10, 1944.

Cabaniss & Johnston, of Birmingham, Ala., for plaintiff.

Jim C. Smith, U. S. Atty., of Birmingham, Ala., for defendant.

MULLINS, District Judge.

This cause came on to be tried, upon the facts without a jury, and upon consideration and pursuant to Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the Court finds the facts specially and states its conclusions of law

---

[23] "It is also clear that a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations of the parties to this action and will terminate and afford relief from uncertainty and controversy." Plaintiffs' brief, page 10.

[24] Federal Uniform Declaratory Judgments Act, Jud.Code Sec. 274d, 28 U.S.C.

A. § 400; Stephenson v. Equitable Life Assurance Soc., 4 Cir., 1937, 92 F.2d 406, loc. cit. 410; National Hairdressers' & Cosmetologists' Ass'n v. Philad. Co., D.C. D.Del., 1941, 41 F.Supp. 701, affirmed in 3 Cir., 1942, 129 F.2d 1020; Interstate Natural Gas Co. v. Louisiana Public Service Commission, D.C.E.D.La., 1940, 34 F. Supp. 980.

thereon with direction for the entry of the appropriate judgment as set forth below.

### Findings of Fact

1. Plaintiff is a national banking association with trust powers, organized and existing under the laws of the United States, with its principal office and place of business at Birmingham, in the Southern Division of the Northern District of Alabama.

2. On, to-wit, September 29, 1930 Roebuck Improvement Company, Inc., an Alabama corporation, entered into an agreement with the City of Birmingham, Alabama, a municipal subdivision of the State of Alabama, for the sale of a certain tract of land consisting of approximately 111 acres together with improvements and equipment thereon theretofore occupied by Roebuck Country Club. The corporation thereupon conveyed all of its assets, including the property above mentioned to plaintiff, as trustee for liquidation, subject to the agreement with the City of Birmingham.

3. The Company was dissolved and plaintiff thereupon consummated the sale to the City of Birmingham of the premises and properties theretofore occupied by Roebuck Country Club. The property (hereinafter referred to as the "park") was purchased by the City for and has been continuously used by it as a public park. The City did not have the funds necessary to pay for the park and therefore was under the necessity of pledging its investment and market equity in the property as security for the deferred payments. In consideration for the conveyance of the park the City paid to plaintiff on closing the transaction the sum of $13,500 in cash and executed and delivered to plaintiff sundry lien certificates evidencing and secured by vendor's lien reserved in and by the deed conveying the park (herein called vendor's lien certificates) aggregating $186,500 principal amount, representing the remainder of the purchase price agreed upon for the transfer of the park property. Said vendor's lien certificates were each for the principal amount of $9,325, bore interest at the rate of 5% per annum payable semi-annually, were numbered serially and matured over a period of years, each of said certificates representing an unpaid installment of the purchase price of the property. A representative copy of said vendor's lien certificates is attached as Exhibit B to the complaint.

4. The vendor's lien obligations by which the City was enabled to purchase the park property were all duly paid, with interest, on the basis originally stipulated and as they matured until refunded as of December 31, 1939, whereupon the outstanding certificates were paid off. Plaintiff received interest from the City of Birmingham in respect of said vendor's lien certificates for the calendar and tax years and in the amounts set out below, viz.:

| Year | Interest Paid by City to Plaintiff |
|------|-----------------------------------|
| 1935 | $7,693.13 |
| 1936 | 7,226.88 |
| 1937 | 6,760.62 |
| 1938 | 6,294.38 |
| 1939 | 7,188.03 |
| 1940 | 1,561.94 |

In its income tax returns filed for the years involved plaintiff took the position that the interest received from the City of Birmingham was exempt under Section 22(b)(4) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(b)(4), which provides in material part as follows:

"(b) Exclusions from gross income.— The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * *

"(4) Tax-free interest. Interest upon (A) the obligations of a State * * * or any political subdivision thereof * * *."

5. The Commissioner of Internal Revenue, reversing his position taken with respect to the initial years, contended that the interest so paid was not exempt and that plaintiff was liable for the payment of income tax thereon, and on, to-wit, May 13, 1940, assessed additional income taxes against plaintiff based on the interest so received from the City for the years and in the amounts set out below, viz.:

| Year | Deficiency based on city interest | Interest on deficiency | Total assessed |
|------|-----------------------------------|------------------------|----------------|
| 1935 | $ 572.53 | $145.95 | $ 718.48 |
| 1936 | 480.68 | 93.70 | 574.38 |
| 1937 | 514.96 | 69.48 | 584.44 |
| 1938 | 667.94 | 50.05 | 717.99 |
| 1939 | 1099.98 | 16.41 | 1116.39 |
| 1940 | 218.67 | — | 218.67 |
| | | | $3930.35* |

(*Government's amended answer).

The foregoing assessed deficiencies and interest thereon were paid by plaintiff to the Collector of Internal Revenue at Birmingham, Alabama, on June 22, 1940.

6. On, to-wit, December 24, 1940, the plaintiff duly filed with the Commissioner of Internal Revenue through the Collector of Internal Revenue at Birmingham, Alabama, his agent for that purpose, separate claims for refund (on Form 843 as prescribed by the Commissioner of Internal Revenue) covering the years and deficiencies involved, assessed and paid as above stated.

7. Under date May 19, 1941, the Commissioner of Internal Revenue rejected in toto said claims for refund. A copy of the Commissioner's notice of the disallowance of said claim is attached as Exhibit C to the complaint.

8. At the time of the execution and delivery by the City of Birmingham of the vendor's lien certificates representing and securing the deferred payments for the purchase price of the park property at the closing of the purchase on or about January 1, 1931, the City paid $13,500 in cash on the principal amount of the purchase. The sum of $9,325 was payable each year thereafter. By January 1, 1940, the City by such payments had reduced the amount due by said vendor's lien certificates to an aggregate amount of $105,000, whereupon the issue was refunded and the entire balance paid in full.

9. The city's investment equity was in addition to any market equity existing and any additional investment equity reflected in the expenditures by the City of Birmingham for the improvement of the park property.

10. Under the terms of the vendor's lien certificates the City of Birmingham was under no obligation to appropriate public funds of the City for the purpose of paying the certificates or interest thereon. The vendor's lien certificates executed by the City contained the following provision:

"Neither this certificate, nor any installment of said purchase price, nor any installment of said interest, is a general or other obligation or liability of the City of Birmingham, but the sole security for the payment of this certificate, and of the installment of the purchase price which it represents and of interest thereon, is said vendor's lien reserved upon the land herein or in said conveyance described."

The deed conveying the park to the City contained the following provision:

"It is further understood that the purchase of the property hereinabove described is made by the City of Birmingham under the provisions of Section 4 of an Act of the Legislature approved September 29, 1923, and that neither the said purchase price for said property, nor the interest thereon, is a charge against the credit of said City, or a general or other obligation or liability of said City, but that the sole security of the holders of said certificates for the payment of said deferred installments is the vendor's lien hereinabove reserved."

The Court finds, however, that the City could make default in the lien obligation represented by the certificate only at the risk of losing any market or investment equity in the public park.

11. Under the decisions of the Supreme Court of Alabama it is held that "revenue" or "special fund" bonds of this general class, which do not on their face constitute a direct pecuniary obligation of the State, its subdivisions or agencies, and which expressly disclaim any charge on the general taxing power or credit of the subdivision or agency, are nevertheless "debts" within the meaning of the State Constitution, requiring a vote of the people or subject to limitation as to amount where the revenues of an existing public system or the system itself, such as a system of waterworks, is pledged or mortgaged. Oppenheim v. Florence, 229 Ala. 50, 155 So. 859.

12. The payment of principal and interest of the vendor's lien certificates involved here is deemed compulsory upon the City which issued them as the only method of avoiding loss of the City's equity in its public park property, although the certificates disclaimed any direct pecuniary obligation. The City of Birmingham refunded as of December 31, 1939, the unpaid vendor's lien certificates, viz.: Numbers 9 to 20 inclusive, and in connection with that refunding operation paid an additional $6,900 on account of principal, leaving unpaid and refunded a total principal amount of $105,000 out of the original purchase price of $200,000. The refunding instrument, as well as the facts and circumstances relating to the original reservation of lien and execution by the City of the vendor's lien certificates, recognized that the mechanism

represented by the original vendor's lien certificates was a means by which the City obtained credit for the deferred payments due on the purchase price for the park property. The refunding instrument contained these recitals:

"(2) In consideration for said conveyance the City paid to the Bank the sum of $13,500 in cash and executed and delivered to the Bank sundry lien certificates evidencing and secured by vendor's lien reserved in and by the park deed (herein called vendor's lien certificates) aggregating $186,500, principal amount, representing the remainder of the purchase price agreed upon for the transfer of the premises conveyed, herein called the park property;

"(3) Said vendor's lien certificates were each for the principal amount of $9325, bore interest at the rate of 5% per annum, payable semi-annually on the first day of July and January of each year, were numbered serially from 1 to 20, inclusive, and matured respectively 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20 years after January 1, 1931, respectively, each of said certificates representing an unpaid installment of the purchase price of the park property."

13. "No-recourse" obligations or securities constitute a familiar fiscal device in the financing of public undertakings by the subdivisions and agencies of the State of Alabama, made necessary by constitutional limitations upon the amount of full recourse obligations permitted in various instances, including municipalities. The practice of issuing "revenue bonds," payable as to principal and interest out of special funds or special taxes (such as gasoline taxes) or secured solely by lien upon property acquired by the State or its subdivisions, is an established source and means of public credit in Alabama for governmental purposes. The Bureau of Internal Revenue originally took the position with respect to the returns of the taxpayer in this matter for the years 1931 and 1932 that the interest was not exempt but on protest reversed this view and accepted the claim of exemption as applied to the years 1931 and 1932. Upon reconsideration of the returns for 1933 and 1934 the Government by letter dated December 30, 1938 held that the interest on the deferred certificates was not exempt under Section 22(b)(4) of the Revenue Act of 1932. The tax was paid under protest, but suit was not filed for recovery. Seasonable filing of claim for refund was inadvertently overlooked.

14. Section 225 of the Alabama Constitution of 1901 lays a prohibition against municipalities incurring direct pecuniary indebtedness in excess of a stated ratio of the total assessed value of local property. The radical recession in assessed values due to the depression left a large proportion of the counties and municipalities in Alabama without any margin or insufficient margin for additional "general credit" obligations.

The no-recourse or revenue bond has been the prevailing means by which Alabama municipalities have in recent years acquired water works systems. The extent to which this type of security has been employed in Alabama may be seen from the following decisions in each of which the public subdivision or authority has, upon the face of the security, disclaimed pecuniary obligation, but has pledged the property or special revenue or expected appropriations as security: Alabama State Bridge Corporation v. Smith, 217 Ala. 311, 116 So. 695 (Note: The bonds issued under the Act there construed (Act approved August 31, 1927, Acts 1927, p. 278–284) have been and are now recognized by the Treasury as tax exempt. They are in principle indistinguishable from the securities here involved); Smith v. Town of Guin, 229 Ala. 61, 155 So. 865; Oppenheim v. Florence, 229 Ala. 50, 155 So. 859; State v. Mobile, 229 Ala. 93, 155 So. 872; Bankhead v. Town of Sulligent, 229 Ala. 45, 155 So. 869, 96 A.L.R. 1381; In re Opinions of Justices, 226 Ala. 18, 145 So. 481; Id., 226 Ala. 570, 148 So. 111; Id., 228 Ala. 140, 152 So. 901; Town of Camden v. Fairbanks, Morse & Co., 204 Ala. 112, 86 So. 8; Id., 206 Ala. 293, 89 So. 456; Isbell v. Shelby County, 235 Ala. 571, 180 So. 567; Lyon v. Shelby County, 235 Ala. 69, 177 So. 306; Herbert v. Perry, 235 Ala. 71, 177 So. 561; Burleson v. County Com'rs of Marion County, 235 Ala. 576, 180 So. 572.

Similar statutes are found in the Alabama Bridge Corporation Act, supra, Acts 1927, p. 278, and in the group of acts authorizing counties to issue bridge securities and acts adopted at the request of the Public Works Administration in order to qualify municipalities for the federal public works program, including, among others, the following:

Craft Act: March 10, 1931, Act No. 118, Acts 1931, p. 186; viaducts and

bridges, accepted as basis for an approved project by PWA.

Goodwyn Act: November 8, 1932, Acts 1932, Ex.Sess., p. 264; waterworks construction or purchase.

Goodwyn Act: November 8, 1932, Acts 1932, Ex.Sess., p. 254; sewerage systems.

Hubbard Act: March 10, 1933, Acts 1933, Ex.Sess., p. 22; waterworks construction or acquisition.

Hubbard Act: March 10, 1933, Acts 1933, Ex.Sess., p. 29; sewerage systems.

Kelly Act: March 29, 1933, Acts 1933, p. 88; waterworks, water supply, sewer, gas systems.

Id.: Amended, Acts 1935, p. 108.

Carmichael Act: Approved April 6, 1933, Acts 1933, Ex.Sess., p. 100; electric systems, subsequently made basis of TVA negotiations.

Poole Act: Approved February 7, 1935, Acts 1935, p. 110; electric systems.

Coleman Act: Approved February 8, 1935, Acts 1935, p. 126; slum clearance and housing.

Lee Act: Approved June 26, 1935, Acts 1935, p. 195; causeways, tunnels, viaducts, highways, parks, etc.

Wallace Act: Approved September 7, 1935, Acts 1935, p. 785; to free toll bridges.

15. The local history of the depression evidences many public works obligations issued by public authority to secure construction of public works for governmental purposes under a plan involving deferred payments in the form of liens on the works or on the revenue from the works such as bridges, waterworks and other municipal utilities, which on their face disclaim any general tax or general credit liability.

16. The Tennessee Valley Authority has extended its system of electric distribution through the purchase or construction by municipalities in the area of distribution systems through the issue of no-recourse obligations secured by the system or its revenue. No instance has been cited in which any municipality within the State of Alabama has acquired any public works project by any other method than the deferred payment, interest bearing, revenue or special fund obligation of this type.

17. Thus, in the case of the Florence Bridge Bonds, issued by the Alabama Bridge Commission, the statute authorizing the issue contained this provision, repeated in the face of the bond:

"It shall be plainly stated on the face of each bond that the same has been issued under the provisions of this Act and that the bond and interest thereon does not constitute any indebtedness of the State or any municipality, county or political subdivision of the State within the meaning of any constitutional or statutory provision of the laws of the State." Section 4, Act No. 44, approved February 7, 1935, Acts 1935, p. 97.

That issue has from the outset been interpreted as exempt by the Bureau of Internal Revenue under the statute in question (Letter of January 28, 1937):

"The bonds will be payable solely from the revenues derived from the toll bridge and when the revenues shall have liquidated the bonds, the bridge will cease to be a toll bridge and will become free."

"It is held that your commission is in effect an instrumentality of the State of Alabama and that the bonds issued by your commission are in effect bonds of the State, issued in the exercise of the borrowing power of the State. Accordingly, the interest on such bonds is exempt from Federal income tax and such bonds will be exempt from the Federal Stamp tax upon their issuance."

The State Statute which authorized the City to acquire park property on the security by means of deferred payments secured by the property is as follows:

"Section 4. For any or all of the purposes mentioned in this Act, any such city upon the recommendation of the park and recreation board may purchase on time or partly for cash with balance on time or deferred payments, or otherwise acquire any real property or interest in real property, within or without the limits of such city, securing the note or notes, claim or claims for deferred payments and interest thereon, with mortgages or deed of trust on the land purchased, or with or by means of an instrument in writing retaining title thereto in the vendor, or enter into any other contractual arrangement whereby provision is made that such note or notes, claim or claims, or other instruments for deferred payments and interest thereon, and all lawful charges, shall not be a charge or charges against the general credit of the city or be a general liability thereof, but that the liability shall only extend to and be a charge against the land so purchased or acquired. Such method of ac-

quisition provided for in this section shall not be considered or deemed exclusive, but cumulative and in addition to all other methods of acquisition of lands or interests therein for public purposes heretofore, hereafter or by other provisions in this Act provided." Section 4, Act No. 529, Acts of 1923, pages 707, 708.

### Conclusions

(1) The vendor's lien certificates signed and issued by the City of Birmingham in the instant matter are not distinguishable in principle or substance from the more conventional form of no-recourse bond or obligation secured by a mortgage upon public property purchased.

(2) The vendor's lien certificates in question were at the outset secured by lien on the City's invested equity in the park property which for the tax year 1936 amounted to $60,125 and by 1940 had increased to $95,000. The pledge or subjection of this increasing equity, with no evidence of any intention by the City to abandon the governmental function served by the park, gave the certificates the status and characteristics of "debts" within the meaning of the constitutional system of Alabama and "obligations" within the purview of Section 22(b)(4) of the Internal Revenue Code.

(3) The mechanism of "no-recourse" securities issued by the State of Alabama, its agencies and sub-divisions, secured by pledge or lien upon special revenue or special funds or secured by the public equity in property of a public or governmental character, constitute a customary and in many instances an indispensable device for obtaining public credit.

(4) The express exclusion or exemption of interest upon the obligations of the States and their subdivisions reflected in Section 22(b)(4) of the Internal Revenue Code has remained unchanged notwithstanding general use of the "no-recourse" form of security by the States to implement their credit and the general acceptance by the Treasury of this class of securities as exempt.

(5) Plaintiff is entitled to recover from defendant the amount of taxes and interest paid as recited in the fifth finding of fact ($3930.35), with interest as provided by law.

Judgment is directed accordingly.